# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania, : | |
| Department of Corrections, State : | |
| Correctional Institution at Forest, : | |
| Petitioner : | |
| : | |
| v. : | No. 265 C.D. 2017 |
| : | Argued: September 14, 2017 |
| Pennsylvania State Corrections : | |
| Officers Association, : | |
| Respondent : | |

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY JUDGE BROBSON      FILED: November 17, 2017

The Pennsylvania Department of Corrections (Department) petitions for review of a decision of an arbitrator, dated February 7, 2017, that reduced the Department's sanctioning of Barry Robinson (Grievant), a corrections officer employed by the Department, from a discharge to a disciplinary suspension followed by reinstatement. For the reasons set forth below, we vacate the award.

## I. BACKGROUND

Grievant worked as a corrections officer at the State Correctional Institution at Forest (SCI-Forest), starting October 24, 2004. During the incidents that gave rise to this appeal, Grievant was a "Maintenance Rover." The duties for this post include supervising a crew of inmates in the maintenance annex of the prison. This maintenance annex includes what the parties refer to as the "back dock," which is near the exit and entrance point of the prison where deliveries are made to the prison. As a Maintenance Rover, Grievant supervised the crew of

inmates that unloaded deliveries from delivery trucks and patrolled the area to maintain the security of the entrance and exit near the back dock. One of the specific responsibilities of Grievant's inmate crew was to remove pallets of food from the delivery trucks and bring them to the cafeteria.

On August 26, 2015, one of Grievant's supervisors, Captain Gregory Settneck (Settneck), observed unauthorized food items in the maintenance annex. Settneck ordered Grievant to remove all food from the maintenance annex and instructed him not to have food in the maintenance annex in the future.

On October 30, 2015, the cafeteria staff at SCI-Forest reported to Captain William Gill (Gill) that four gallons of hot sauce, which were to be delivered that day, were missing. Gill reviewed video footage of the maintenance annex for that day. Gill observed one of Grievant's inmate workers removing the hot sauce and placing it into a nearby dumpster. The video also revealed Grievant removing loaves of bread from the truck and placing them in the maintenance annex office. Finally, the video revealed Grievant removing a box, later revealed to contain gloves, and tossing the box to one of the inmates.

In response to the information gleaned from the video, the SCI-Forest administrators (the Department) ordered a search of the maintenance annex. The staff who conducted the search discovered cereal, bread, lunch meat, unauthorized tools, and broken pieces of metal. Lieutenant Justin Davis (Davis) conducted a fact-finding investigation regarding Grievant's conduct, interviewing Grievant and several other corrections officers. Grievant told Davis that he and his inmate crew frequently missed lunch, and he removed food from delivery trucks because removing the food from the trucks was easier than requesting lunch be brought to the maintenance annex. Grievant recovered the hot sauce and "wrote up" the

2

culpable inmate. Davis reported the information from the video to the SCI-Forest administration, who temporarily removed Grievant from his position as Maintenance Rover. Davis concluded that Grievant violated several "post orders" as well as various sections of the Department's Code of Ethics.

The Department temporarily reinstated Grievant to his position as Maintenance Rover. On January 6, 2016, SCI-Forest staff conducted a routine search of the maintenance annex and discovered fruit, vegetables, sugar, rice, bread, and an antenna. Two days later, on January 8, 2016, a staff member informed Davis that Grievant's work crew was sitting around the maintenance area, reading magazines in Grievant's view. In response to that information, Davis ordered another search of the maintenance annex the next day, January 9, 2016. The searching staff members discovered sugar, bread, bananas, an empty thyme container, magazines, and pornography.

The Department conducted two Pre-Disciplinary Conferences on December 23, 2015, and February 9, 2016, to allow Grievant the opportunity to respond to the allegation that he violated orders and the Department's Code of Ethics. By letter dated April 8, 2016, the Department informed Grievant that it was terminating Grievant's employment at SCI-Forest. At some point prior to his termination, Grievant had bid on and was awarded a new position in the observation tower of the prison yard. The Department, however, notified Grievant that he was discharged immediately prior to Grievant beginning his new position.

Grievant requested Respondent Pennsylvania State Corrections Officers Association (Association) file a grievance on his behalf pursuant to the Collective Bargaining Agreement between the Association and the Department, which it did. Following the denial of the grievance through the Collective

3

Bargaining Agreement's grievance procedure, the parties submitted the matter to arbitration.

The Association and the Department selected Christopher Miles, Esquire (Arbitrator), to resolve the matter. The Arbitrator conducted evidentiary hearings on October 24, 2016, and October 25, 2016. On February 7, 2017, the Arbitrator reinstated Grievant following a 30-day suspension. The Arbitrator explained in his award that he found credible Grievant's testimony that the box that he tossed to an inmate as recorded in the October 30, 2015 video footage, contained gloves, which the institution permitted inmates to possess. The Arbitrator also found that Grievant failed to follow the order from Settneck not to have food in the maintenance annex, because staff found food there as a result of each of the three searches. The Arbitrator explained that he did not find that Grievant was irredeemable, only that, "he should not be in a position which requires his supervision of inmates." (Reproduced Record (R.R.) at 18a.)[1] The Arbitrator followed that restriction by speculating that perhaps "Grievant recognizes this as

---

[1] On May 25, 2017, the Arbitrator granted the Department's request to stay Grievant's reinstatement pending the appeal to this Court. In addition to granting the request, the Arbitrator also elaborated on his February 7, 2017 award and supporting opinion. Specifically, the Arbitrator explained:

> My Award did not indicate that [Grievant] was incapable of exercising care, custody, or control of inmates, just that he should not be supervising a work crew which entails extraordinary hands[-]on oversight when compared to the duties typically performed by a more traditional [corrections officer] position.

(Arbitrator's Ruling on Cmwlth.'s Request for Stay at 2, dated May 25, 2017.) By order dated September 6, 2017, the Court granted the Association's unopposed application to supplement the record to include the Arbitrator's Ruling. The Association makes an argument that mirrors the point clarified in the Arbitrator's ruling, which point we address below. We note that inclusion of this ruling in the record does not alter our analysis or result.

4

well, [because] he bid to a tower position where he would not be required to supervise and would have limited interaction with the inmate population." (*Id*.)  The Arbitrator noted Grievant had bid on the position prior to his discharge, but the Department dismissed Grievant before he began the tower position.  The Arbitrator determined, "the [Department] had just cause in Accordance with Article 26 of the [Collective Bargaining] Agreement to discipline [Grievant] for his failure to fully comply with the requirements of his position as Maintenance Rover; however . . . termination was not warranted."  (*Id.*)[2]  The Department appealed the Arbitrator's award to this Court.

## II. DISCUSSION

On appeal, the Department argues that the Arbitrator's award was not rationally derived from the Collective Bargaining Agreement between the Department and the Association, because the award, in essence, modified the agreement by infringing on the Department's managerial right to direct its own workforce.  The Department argues that by stating that Grievant should not be in a position which requires his supervision of inmates, Grievant would be unable to perform the principal duty of a corrections officer—the care, custody, and control of inmates. Namely, the Department expresses concern that it "would not be able to place [Grievant] in any other posts with more direct contact with inmates, thus not allowing [the Department] to direct its own workforce and creating an undue burden on management and fellow corrections officers." (Dep't Br. at 17.)  The Department

---

[2] Section 1 of Article 26 of the Collective Bargaining Agreement, which provides, in relevant part:

> The Employer shall not demote, suspend, discharge or take any disciplinary action against the employee without just cause.

(R.R. at 105a.)

5

further asserts that the Arbitrator's award violates the public policy of humane confinement under the Eighth Amendment of the United States Constitution, because Grievant would not be able to protect inmates from one another.

In response, the Association argues that the Arbitrator's award is rationally derived from the terms of the Collective Bargaining Agreement. The Association first argues that an award does not violate the essence test by reducing a discharge to a suspension. The Association further argues that the award does not infringe upon the Department's managerial right to direct its own workforce, because the award does not prevent the Department from assigning Grievant to a different position upon his return. The Association argues that the Arbitrator's award, by reinstating Grievant to the observation tower, did not eliminate Grievant's responsibility for the care, custody, and control of inmates. Rather, the award merely reinstated Grievant to a position that does not include supervision of an inmate work crew. In the same light, the Association argues that the award does not violate public policy, because it does not require the Department to employ a corrections officer that is unable to supervise inmates.

## A. Essence Test

The essence test is an exceptionally deferential standard, because binding arbitration is a highly favored method of dispute resolution. *Northumberland Cnty. Comm'rs v. Am. Fed'n of State, Cnty. & Mun. Employees, AFL-CIO Local 2016, Council 86*, 71 A.3d 367, 374 (Pa. Cmwlth. 2013). An arbitrator's award, however, must draw its essence from the collective bargaining agreement. *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). Pursuant to the "essence test," an award should be upheld if (1) the issue, as properly defined, is within the terms

6

of the collective bargaining agreement, and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007). That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement. *Cheyney Univ.*, 743 A.2d at 413.

Here, it is essentially undisputed by the parties that the first prong of the essence test is met—*i.e.*, the issue of whether the Department terminated Grievant's employment for just cause is within the terms of the Collective Bargaining Agreement.[3] As a result, we are left to determine only whether the award can be rationally derived from the Collective Bargaining Agreement.

Regarding the second prong of the essence test, we agree with the Association that, within the context of an undefined just cause provision, an award does not violate the essence test by reducing a termination to a suspension and reinstatement, despite the arbitrator finding that the grievant committed the acts for which he was terminated. Our Supreme Court addressed this issue in *Office of Attorney General v. Council 13, American Federation of State, County & Municipal Employees, AFL–CIO*, 844 A.2d 1217 (Pa. 2004). There, the Office of Attorney General discharged a narcotics agent for misconduct following an incident of intoxicated driving. The arbitrator found that the narcotics agent had in fact

---

[3] If a grievant raises an issue that is "arguably dealt with by the bargaining agreement then arbitration is required." *Ringgold Sch. Dist. v. Abramski*, 426 A.2d 707, 710 (Pa. Cmwlth. 1981). If a collective bargaining agreement embraces the issue raised, the arbitrator has jurisdiction over the dispute. *Pa. Tpk. Comm'n v. Teamsters Local Union No. 77*, 45 A.3d 1159, 1164-65 (Pa. Cmwlth. 2012).

committed the acts that led to his discharge but reinstated him nonetheless. In affirming the arbitrator's award, the Supreme Court explained:

> By failing to agree upon and incorporate a definition of just cause into the collective bargaining agreement, and by casting the arbitrator into the role of resolving disputes arising under the collective bargaining agreement, we believe that it is clear that the parties intended for the arbitrator to have the authority to interpret the terms of the agreement, including the undefined term "just cause" and to determine whether there was just cause for discharge in this particular case.

*Office of Attorney Gen.*, 844 A.2d at 1224. Likewise, in our case, by requiring the Arbitrator to determine whether Grievant's discharge was supported by just cause, in light of a just cause provision that the Department and the Association left undefined in the Collective Bargaining Agreement, the parties received the benefit of their bargain. Thus, we agree with the Association that, in this respect, the Arbitrator did not violate the essence test.

Nevertheless, here, we cannot say that the Arbitrator's award is rationally derived from the terms of the Collective Bargaining Agreement. The Arbitrator determined that Grievant "should not be in a position which requires his supervision of inmates," but the Arbitrator then proceeded to reinstate Grievant to his post as a corrections officer—a position that necessarily requires the supervision of inmates. This effectively created a second class of corrections officers, one with less utility to the Department at SCI-Forest. Section 5102 of the State Employees' Retirement Code, 71 Pa. C.S. § 5102, defines a "correction officer" as follows:

> Any full-time employee assigned to the Department of Corrections or the Department of Public Welfare *whose principal duty is the care, custody and control of inmates* or direct therapeutic treatment, care, custody and control of inmates of a penal or correctional institution, community treatment center, forensic unit in a State

8

> hospital or secure unit of a youth development center operated by the Department of Corrections or by the Department of Public Welfare.

(Emphasis added.) The Arbitrator's direction that, upon reinstatement, Grievant should not supervise inmates is at odds with the statutory definition of a corrections officer.

The Association makes two arguments on this point. First, the Association contends that the award does not require the Department to reinstate Grievant to the observation tower position; the award simply reinstated Grievant to the position he was given prior to his discharge. According to the Association, the award does not prevent the Department at SCI-Forest from placing Grievant in another corrections officer position. Second, the Association argues that the award does not hold that Grievant could not exercise care, custody, supervision, and control over inmates. Instead, the Association argues that the Arbitrator's award determined that Grievant was better suited for a position that still requires supervision of inmates, just "not the more intensive, specialized supervision required of a Maintenance Rover tasked with supervising *inmate workers*." (Ass'n Br. at 24 (emphasis in original).)

The Association's arguments are unpersuasive. It makes no difference that SCI-Forest has corrections officers at several locations throughout the prison grounds, with varying responsibilities or degrees of supervision over inmates. By placing any restrictions on the supervisory capacity of Grievant, the Arbitrator's award limited Grievant's capacity to carry out the "principal duty" of a corrections officer. *See* 71 Pa. C.S. § 5102. Moreover, our holding would not change were we to agree with the Association that the Arbitrator's award essentially allows Grievant to return to every other corrections officer position other than Maintenance Rover. Particularly given the security-sensitive nature of a corrections facility, SCI-Forest

9

cannot be forced to employ a corrections officer that has any limitation on his ability to interact with inmates. Instead, SCI-Forest must have flexibility to utilize Grievant in whatever position enables the institution to best manage the inmates.

In fact, as the Department correctly points out, Article 2 of the Collective Bargaining Agreement specifically affords the Department the managerial right to direct its own workforce:

> Matters of inherent managerial policy are reserved exclusively to the Employer. These include but shall not be limited to such areas of discretion or policy as the functions and programs of the Employer, standards of service, its' [sic] overall budget, utilization of technology, *the organizational structure and selection and direction of personnel*.

(Supplemental Reproduced Record (Supp. R.R.) at 4b (emphasis added).) The Collective Bargaining Agreement also precludes an arbitration award from adding to, subtracting from, or modifying the Department's managerial right. (Supp. R.R. at 77b.) Here, the Arbitrator's award essentially modified the Department's managerial right by restricting it from placing Grievant in a supervisory role or the Maintenance Rover position in particular.

By reinstating Grievant to a corrections officer position while placing a restriction on him that is irreconcilable with the statutory definition of correction officer, thereby infringing on the Department's managerial right to direct corrections officers at SCI-Forest, the Arbitrator's award failed to satisfy the essence test.

## B. Public Policy[4]

---

[4] An arbitration award that draws its essence from the collective bargaining agreement will nonetheless be set aside if it contravenes public policy. *City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 413 (Pa. Cmwlth.), *appeal denied*, 32 A.3d 1279 (Pa. 2011). An application of this public policy exception requires a three-step analysis. First, the nature of the conduct

The Department raises public policy concerns relating to the possible inability of Grievant to protect inmates from one another. The Department suggests that Grievant's inability in such situations raises the potential of liability for failure to protect suits. Because we have concluded that the Arbitrator's award is not rationally derived from the CBA in this instance, we do not need to address whether the public policy exception may be applied to vacate the award.

## III.  CONCLUSION

The Arbitrator's award did not draw its essence from the terms of the Collective Bargaining Agreement and, therefore, fails under the essence test. Accordingly, we vacate the Arbitrator's award.

P. KEVIN BROBSON, Judge

---

leading to the discipline must be identified. *Id.* at 414. Second, we must determine if that conduct implicates a public policy which is "well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* Third, we must determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator. *Id.* The determination of whether an arbitration award violates public policy is a question of law, subject to our plenary review. *Philadelphia Hous. Auth. v. Am. Fed'n of State, Cnty. & Mun. Employees, Dist. Council 33, Local 934*, 52 A.3d 1117, 1121 (Pa. 2012).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Corrections, State :
Correctional Institution at Forest, :
                      Petitioner :
                             :
          v. : No. 265 C.D. 2017
                             :
Pennsylvania State Corrections :
Officers Association, :
                   Respondent :

# **O R D E R**

AND NOW, this 17th day of November, 2017, the award of the arbitrator, dated February 7, 2017, is VACATED.

_____
P. KEVIN BROBSON, Judge