Allegheny County, :
                Appellant :
 :
          v. :
 :
United Steel, Paper and Forestry, :
Rubber, Manufacturing, Energy, :
Allied Industrial, and Service Workers : No. 527 C.D. 2018
International Union, AFL-CIO, CLC : Argued: February 11, 2019

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE ANNE E. COVEY, Judge (P.)
             HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: March 13, 2019

Allegheny County (County) appeals from the March 13, 2018 order of the Court of Common Pleas of Allegheny County (trial court) affirming an arbitration award which found that the County violated a collective bargaining agreement (CBA) by assigning to certain Allegheny County Jail employees work that was inconsistent with primary assignments in the absence of emergent circumstances. Upon review, we affirm.

The County and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO, CLC (Union) are parties to a CBA governing the terms and conditions of employment for a unit of County employees (Unit) providing health care services at

the Allegheny County Jail. *See* CBA at 1-41, Reproduced Record (R.R.) at 143-83. The Union is the exclusive bargaining representative for the Unit, which the CBA defines as "a group of County employees comprised of all permanent full-time and regularly scheduled part-time employees rendering healthcare services and/or support services associated with the rendering of health care services at [the] Allegheny County Jail, but excluding medical doctors, dentists, supervisors, first level supervisors, management and confidential employees as defined in [the Public Employe Relations Act (PERA)]."[1] CBA at 1-2, R.R. at 143-44. The CBA establishes a grievance procedure to resolve any "alleged breach or violation of this Agreement or a dispute [a]rising out of the interpretation or application of the provisions of this Agreement," providing for arbitration as a last resort in accordance with Section 903 of the PERA, 43 P.S. § 1101.903. CBA at 2-4, R.R. at 144-46. Pursuant to the CBA, "[t]he decision of the arbitrator shall be in writing, final and binding on the matter grieved in accordance with the terms of Section 903 of [the PERA]." CBA at 4-5, R.R. at 146-47.

The present dispute pertains to the scope of the County's authority under Article VIII of the CBA to assign work to employees who have been awarded primary assignments. Arbitration Award at 1-2, R.R. at 2-3. The CBA indicates that a primary assignment is an assignment to a "specific work area" in the jail. CBA at 8, R.R. at 150. With regard to mental health specialists, Article VIII(1)(C)(1) of the CBA provides that "the County shall establish one (1) Primary Assignment in each of the following work locations:" Intake, Sick Call and Mental Health Units. CBA at 8-9, R.R. at 150-51. The grievant in the dispute is a County employee at the Allegheny County Jail who bid for and was awarded the primary assignment of

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

2

"Mental Health Specialist – Intake during the dayshift." Arbitration Award at 1, R.R. at 2. The County subsequently issued a post order[2] detailing the required duties for this assignment, which contained "several duties not related to intake" and were "generally not performed in the intake area of the [jail]." Arbitration Award at 1, R.R. at 2. The Union filed a grievance alleging that the post order violated Article VIII, Section 1, subsections (B) and (C)(1), as well as "[a]ny and all that apply" on the basis that the "[a]dditional duties added to [p]rimary [a]ssignments . . . were not negotiated" and that "[t]he [mental health employees] are doing each other's work which negates the purpose of having a [p]rimary [a]ssignment." County of Allegheny, Official Grievance Form, R.R. at 190. The County denied the grievance and refused to modify the post order. Arbitration Award at 1, R.R. at 2. Unable to resolve the dispute, the parties submitted the matter for arbitration. Arbitration Award at 2, R.R. at 3.

Before the arbitrator, the Union contended that the County violated the CBA when it assigned duties that were inconsistent with the grievant's primary assignment in the absence of exigent circumstances. Arbitration Award at 3-4, R.R. at 4-5. The Union "assert[ed] that the duties contained in these post orders [fell] within the purview of a different assignment[,] which result[ed] in employees . . . being pulled away from their primary assignment despite the absence of emergent circumstances." Arbitration Award at 3-4, R.R. at 4-5. "Accordingly, the Union request[ed] that the grievance be sustained and the County cease and desist from assigning regular duties to employees . . . that are outside of their primary assignment, except for emergent circumstances." Arbitration Award at 4, R.R. at 5. In response, the County asserted "that it retains the right under Article VIII Section

_____

[2] Although the CBA does not define "post order," the arbitration award indicates that post orders "detail[] required duties for a given assignment." Arbitration Award at 1, R.R. at 2.

3

[(1)](A) to assign duties to employees throughout any area of the [p]rison and to change schedules and assignments to ensure adequate patient care." Arbitration Award at 5, R.R. at 6.

On July 24, 2017, the arbitrator sustained the grievance and ordered the County to "cease and desist from assigning duties through post orders or otherwise to employees . . . that are outside their primary assignment except for emergent circumstances." Arbitration Award at 7, R.R. at 8. The arbitrator identified "[t]he crux of the issue" as disagreement regarding interpretation of the provisions contained in Article VIII(1)(A), (B) & (C)(1) of the CBA. Arbitration Award at 5, R.R. at 6. The arbitrator noted that "[n]ot every employee has a primary assignment, and that "[i]t is undisputed on the record that at most one primary assignment per worker per shift is the norm." Arbitration Award at 5, R.R. at 6. The arbitrator further noted that "[e]mployees who are awarded primary assignments are usually the most senior employees who have gained experience in a variety of areas and have obtained core competencies in those areas for which they are assigned." Arbitration Award at 6, R.R. at 7. The arbitrator explained that "for those employees without a primary assignment, the County retains broad discretion under . . . Article VIII[(1)](A) to assign duties throughout different areas of the [jail]." Arbitration Award at 5-6, R.R. at 6-7.

The arbitrator also noted that "the Management Rights clause set forth in Article XVII of the CBA must be reconciled with the 'emergent circumstances' language in Article VIII[(1)](C) of the CBA." Arbitration Award at 6, R.R. at 7. The arbitrator determined that "[t]he word 'emergent' means arising unexpectedly; an urgency." *Id.* The arbitrator found that "[the] post order for the [g]rievant contain[ed] duties that would pull the [g]rievant from her primary assignment

4

despite the lack of emergent circumstances." *Id.* Thus, the arbitrator found that "the County violated Article VIII[(1)](C) of the CBA[.]" *Id.*

The arbitrator further explained that although "Article VIII, Section 1, subsections (A) and (B)[] create a general rule that the County can assign duties in a way that is reasonably necessary for patient care and efficient operations[,] . . . subsection (C) creates a clear exception to that general rule for employees who bid for and are awarded primary assignments." *Id.* The arbitrator explained as follows:

> In the instant case, the Union and the County mutually agreed in the CBA to a procedure whereby the most senior employees could bid for primary assignments in the area they felt most comfortable in or best suited for. These primary assignments are delineated in the table described in Article VIII[(1)](C) of the CBA. If the arbitrator were to conclude that the County has the unfettered discretion to assign employees by post order to any area in the [jail] regardless of their primary assignment, it would nullify the "emergent circumstances" language set forth in Article VIII[(1)](C) of the CBA. Further, such a finding would also violate the constraint imposed on the arbitrator in Article III[(4)](C) of the CBA[, pursuant to which] . . . . [t]he arbitrator is authorized only to clarify and interpret the express terms, provisions or clauses of this Agreement and does not have the authority to enlarge, alter, modify, delete or change the express terms, provisions or clauses of this Agreement.

Arbitration Award at 6-7, R.R. at 7-8. Thus, the arbitrator sustained the grievance and ordered the County "to cease and desist from assigning duties through post orders or otherwise to employees . . . that are outside their primary assignment except for emergent circumstances." Arbitration Award at 7, R.R. at 8.

5

On August 23, 2017, the County filed a petition to vacate the arbitration award with the trial court. Petition to Vacate, Modify or Amend Arbitrator's Award at 1-6, R.R. at 9-14.[3] The Union filed its answer on November 14, 2017. R.R. at 15-21. On March 13, 2018, upon reviewing the arbitration award under the "essence test,"[4] the trial court issued an order denying the County's petition and affirming the arbitration award. Trial Court Order, R.R. at 127. The trial court found that there was no contention that the issue was properly defined within the terms of the CBA and that "the [a]rbitrator's decision [is] rationally derived from [the] CBA." *Id.*

Before this Court, the County argues that the arbitrator's award fails to comport with the essence test and should be reversed. County's Brief at 8 & 19. The County contends that "[t]he parties explicitly contracted to retain the Allegheny County Jail's managerial prerogative to change schedules and assignments notwithstanding any other provisions [in the CBA]." *Id.* at 19 (internal quotation marks omitted). To support this assertion, the County cites Article VIII(1)(A) of the CBA:

> Notwithstanding any other provision in this Agreement, the County has the right to establish work schedules and starting times and to change schedules and assignments as reasonably necessary for patient care and efficient operations.

*Id.* at 13 (quoting CBA at 8, R.R. at 150). The County asserts that "[a]n arbitrator's interpretation of a CBA is guided by general contract construction principles," such

---

[3] Although titled a Petition to Vacate, Modify or Amend Arbitrator's Award, the County only requests that the trial court vacate the arbitrator's award. *See* Petition at 4 & 6, R.R. at 12 & 14.

[4] *See State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405 (Pa. 1999) and discussion *infra* p.11.

that interpretation of a CBA "requires a consideration of the entire [agreement] to decipher its intent." *Id.* at 18 n.4 (quoting *Am. Fed'n of State, Cty., & Mun. Emps., Dist. Council 87 v. County of Lackawanna*, 102 A.3d 1285, 1291 (Pa. Cmwlth. 2014) (citation omitted)). The County further contends that interpreting a CBA requires "that no provision of a contract should be treated as surplusage or redundant if any reasonable meaning consistent with other parts of the agreement can be given to it[.]" *Id.* at 18 (quoting *Wyo. Valley W. Sch. Dist. v. Nw. Sch. Dist.*, 695 A.2d 949, 953 (Pa. Cmwlth. 1997) (citation omitted)). With these principles in mind, the County asserts that the arbitrator's determination that employees may only be assigned work that is inconsistent with primary assignments in the event of emergent circumstances "render[s] Article VIII(1)(A) nothing more than meaningless surplusage," and "cannot be said to be rationally derived from the CBA[.]" *Id.* at 19.

The County also cites Section 702 of the PERA to support its contention that it retained the assignment of employees' duties as a managerial prerogative, stating, "[p]ublic employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the . . . selection and direction of personnel." *Id.* at 10 (quoting Section 702 of the PERA, 43 P.S. § 1101.702). In addition, the County relies upon *Department of Corrections, State Correctional Institution at Forest v. Pennsylvania State Correctional Officers Association*, 173 A.3d 854 (Pa. Cmwlth. 2017), in support of its assertion that "the Allegheny County Jail unequivocally retained its managerial prerogative to assign work as needed and to modify work assignments[.]" County's Brief at 13.

7

Further, the County cites Article XVII(2) of the CBA, which provides that "[e]mployees will comply with County rules, regulations and policies as adopted or revised and will perform all duties as assigned." *Id.* at 14 (quoting CBA at 23, R.R. at 165). The County contends that "[t]his authority is reiterated within the job description for the position in question," which placed applicants on notice that they would be required to "[p]erform[] other duties as assigned." *Id.* at 13-14 (citing Allegheny County Job Announcement at 1, R.R. at 192). The County also cites Article VIII(1)(B) of the CBA, which provides as follows:

> Both parties agree that continuity of care plays an important role in the delivery of patient care and also agree that employees shall work in a variety of areas in order to assure that patient needs can be accommodated in changing circumstances . . . . In recognition to [sic] the parties joint objectives outlined in subsection 1(B), the County will exercise reasonable efforts to regularly schedule fulltime and part-time employees to a specific work area (Primary Assignment) in accordance with required qualifications, preference and seniority.

*Id.* at 16 (citing CBA at 8, R.R. at 150). According to the County, "[t]his clause establishes the understanding and intention of the parties" that the County "is to exercise reasonable efforts to regularly schedule employees who have bid primary assignments to a specific work area," and that "[t]his is not to be construed as an absolute." *Id.* The County maintains that "the parties recognized that primary assignments are not contractual mandates, and that "[e]mployees who bid a primary assignment may be moved in order to ensure familiarity with other areas of the jail." *Id.* at 17. The County contends that it must only make a "reasonable effort" to adhere to primary assignments and that employees do not possess "an unalienable right to

8

a primary assignment." *Id.* The County maintains that "[n]othing within this CBA suggests that the Primary Assignment constitutes the sole or only assignment an employee may be given," but that "[t]o the contrary, the clear language of the CBA provides that there will be assignments outside the scope of the primary assignment." *Id.*

According to the County, "[a]ny interpretation which limits the authority of the Allegheny County Jail effectively negates the explicitly granted authority bargained for by the parties." *Id.* The County reasons that "[t]he [a]rbitrator's interpretation of 'primary' as 'absolute and final' creates this irrational result," and that, "[b]y definition, a primary assignment implies the existence of secondary or tertiary positions which at times an employee may be required to work." *Id.* at 19. The County asserts that "[i]t is in this aspect that the arbitrator has gone beyond a rational interpretation to deny all parties their bargained for benefits." *Id.* Thus, the County contends that "[t]he arbitrator has rendered provisions of [the PERA and the CBA] meaningless in order to prohibit the assignment of additional duties to these employees," such that the arbitrator's "decision cannot be said to draw its essence from and/or [be] rationally derived from the CBA." *Id.* at 20.

The Union argues that "[t]he decision of the [trial court] confirming the [a]rbitration [a]ward should be affirmed," because "[t]he [a]rbitration [a]ward addressed specific terms of the [CBA]" and "the interpretation of the [a]rbitrator is rationally derived from the terms of the [CBA]" to which "the parties had mutually agreed[.]" Union's Brief at 16. The Union contends that "the County seeks to relitigate the facts presented to [the] [a]rbitrator . . . during the arbitration hearing and to get this Honorable Court to second guess the arbitrator's construction of the clauses of the [CBA]." *Id.* at 11. The Union contends that "the [a]rbitrator[,] in

9

finding the grievance meritorious, addressed specific terms of the [CBA]." *Id.* at 12. The Union cites *Pennsylvania State System of Higher Education v. Association of Pennsylvania State College and University Faculties*, 98 A.3d 5 (Pa. Cmwlth. 2014) for support, contending that "[t]he university made the same argument that the County offers [i]n this appeal," and that "[t]he Court rejected those arguments[.]" Union's Brief at 14. Further, the Union maintains that the County's interpretation of the CBA "would render the 'emergent circumstances' language set forth in Article VIII[(1)](C) of the [CBA] a nullity, while leading the [a]rbitrator to violate Article III(4)(C)[,] . . . which prohibits the [a]rbitrator from changing express terms of the [CBA]." *Id.* at 16.

Appellate review of a grievance arbitration award is conducted pursuant to the two-part "essence test":

> First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the [CBA]. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). Thus, "[a]n arbitrator's award must be sustained 'if it is based on anything that can be gleaned as the 'essence' of the [CBA].'" *Pa. State Sys. of Higher Educ.*, 98 A.3d at 14 (quoting *Am. Fed'n of State, Cty. & Mun. Emps., Dist. Council 84, AFL–CIO v. City of Beaver Falls*, 459 A.2d

10

863, 865 (Pa. Cmwlth. 1983)). Further, "[t]he essence test does not permit this Court to vacate an arbitrator's award even if we disagree with the arbitrator's interpretation of the CBA." *Dist. Council 87*, 102 A.3d at 1290 (citing *Cent. Susquehanna Intermediate Unit Educ. Ass'n v. Cent. Susquehanna Intermediate Unit # 16*, 459 A.2d 889, 890 (Pa. Cmwlth. 1983)). "The essence test is an exceptionally deferential standard, because binding arbitration is a highly favored method of dispute resolution." *Forest*, 173 A.3d at 858 (citing *Northumberland Cty. Comm'rs v. Am. Fed'n of State, Cty. & Mun. Emps., AFL–CIO Local 2016, Council 86*, 71 A.3d 367, 374 (Pa. Cmwlth. 2013)). The party challenging an arbitration award bears the "burden of proving the award does not draw its essence from the CBA." *See Pa. State Sys. of Higher Educ.*, 98 A.3d at 14.

As noted by the arbitrator, this case hinges on the interpretation of certain provisions of Article VIII of the CBA in order to resolve the question of whether the County may assign duties to employees that are inconsistent with primary assignments in the absence of emergent circumstances. The County essentially argues that Article XIII(1)(A) of the CBA secures nearly unconditional authority to do so. The arbitrator found, however, that Article VIII, Section 1, subsections (A) and (B) create a general rule, to which subsection (C) is a "clear exception" for employees with primary assignments. Arbitration Award at 6, R.R. at 7. Upon review of the relevant provisions of the CBA, we find that the arbitrator's award is rationally derived therefrom and, therefore, affirm.

A recent decision of this Court concerning a similar question is instructive. In *Pennsylvania State System of Higher Education*, the Pennsylvania State System of Higher Education, Kutztown University (University), petitioned for review of a grievance arbitration award finding that the University violated the

11

parties' CBA by assigning librarians the task of providing academic advice to students. *Pa. State Sys. of Higher Educ.*, 98 A.3d at 7. The University argued, similar to the County here, that the arbitrator "disregarded its managerial rights." *Id.* The arbitrator determined that the CBA did not "[give] a right to management to assign librarians the duty of providing students academic advice," but instead "established . . . advising students [as] a contractual duty of the teaching faculty." *Id.* at 11. The arbitrator reached this conclusion even though the CBA cited Section 702 of the PERA, stating that "matters of inherent managerial policy are reserved exclusively to the state system/universities," and that these "include but shall not be limited to . . . the . . . selection and direction of personnel." *Id.* at 12. In affirming the arbitrator's award, we explained:

> [T]he PERA does not obligate a public employer to negotiate matters of "inherent managerial policy." *Pennsylvania Turnpike Commission v. Teamsters Local Union No. 77*, 87 A.3d 904, 910 (Pa. Cmwlth. 2014). However, "if a public employer chooses to do so, absent contrary positive legislation, it is bound by the terms of a CBA." *Id.* (quoting *Coatesville Area School District* [*v. Coatesville Area Teachers' Ass'n/Pa. State Educ. Ass'n*], 978 A.2d [413,] 417 [(Pa. Cmwlth. 2009)]).

*Id.* at 13 (brackets omitted). Thus, we affirmed the arbitrator's "determin[ation] that the CBA limited [the] University from assigning the task of advising students to any of its employees other than teaching faculty." *Id.* Further, we noted that "[t]he [a]rbitrator analyzed the CBA in its entirety," citing "a number of provisions in the CBA and offer[ing] a reasonable construction of them." *Id.* at 14.

In the matter *sub judice*, the County seems to imply by citing Section 702 of the PERA that it could not possibly have agreed to limit its authority to

determine employees' assignments, because such a matter is not bargainable. However, as we have held previously, where, as here, a public employer elects to bargain over a matter of inherent managerial policy, it is bound by the negotiated terms of the CBA.[5] *See id.* at 13. As the trial court stated, "[t]o rule in favor of the [County] here would allow [it] to change the terms of the negotiated agreement." Trial Court Opinion at 7, R.R. at 135. Further, we note that the County's reliance on *Forest* in support of its assertion that it retained a managerial prerogative to modify primary assignments in the absence of emergent circumstances is misplaced, as that case did not involve whether the Department of Corrections bargained over and, therefore, limited an alleged matter of inherent managerial policy. *See Forest*, 173 A.3d at 860.

Further, the County's contention that the job description reinforces its authority is meritless, as our review under the essence test is confined to whether the arbitrator's interpretation logically flows from the CBA. Moreover, we find that the contract construction principles invoked by the County in fact support the arbitrator's interpretation of the CBA. Whereas the County's interpretation of Article VIII(1)(A) as providing for nearly unlimited authority over employee assignments essentially renders the "emergent circumstances" provision of Article VII(1)(C)(1) meaningless, the arbitrator's decision harmonizes the two provisions by discerning that the former sets forth the general rule to which the latter creates a specific exception for employees who bid for and are awarded primary assignments. Further, the arbitrator's reconciliation of these two provisions is in accord with the rule of contract construction that "where there is a repugnancy, a general provision

---

[5] We note that we need not opine as to whether the County's issuance of post orders that were inconsistent with primary assignments in fact constitutes the exercise of a managerial prerogative for purposes of Section 702 of the PERA. Having negotiated the matter, the County is bound by the resulting CBA provisions. *See Pa. State Sys. of Higher Educ.*, 98 A.3d at 13.

13

in a contract must give way to a special one covering the same ground." *Harrity v. Cont'l-Equitable Title & Tr. Co.*, 124 A. 493, 495 (Pa. 1924) (citations omitted). Thus, because the arbitrator analyzed the CBA in its entirety and offered a reasonable construction of its provisions, we find that its award logically flows from the essence of the CBA. *See Pa. State Sys. of Higher Educ.*, 98 A.3d at 14.

Accordingly, we affirm the decision of the trial court affirming the decision of the arbitrator and denying the County's petition to vacate the arbitration award.

_____
CHRISTINE FIZZANO CANNON, Judge

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Allegheny County, | : |
| Appellant | : |
| | : |
| v. | : |
| | : |
| United Steel, Paper and Forestry, | : |
| Rubber, Manufacturing, Energy, | : |
| Allied Industrial, and Service Workers | : No. 527 C.D. 2018 |
| International Union, AFL-CIO, CLC | : |

## O R D E R

AND NOW, this 13th day of March, 2019, the March 13, 2018 order of the Court of Common Pleas of Allegheny County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge