Borough of Gettysburg,         :
               Appellant     :
                             :
         v.                  :
                             :
International Brotherhood of Teamsters, :   No. 1460 C.D. 2019
Local 776, Police Labor Organization   :   Submitted: May 11, 2020

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

OPINION BY
JUDGE COVEY                             FILED: June 5, 2020

        The Borough of Gettysburg (Borough) appeals from the Adams County Common Pleas Court's (trial court) September 20, 2019 order denying the Borough's Petition to Vacate Grievance Arbitration Award (Petition to Vacate). The Borough presents three issues for this Court's review: (1) whether the Arbitrator exceeded his powers by creating a new set of job duties in conflict with the parties' Collective Bargaining Agreement (CBA) and infringing on the Borough's inherent managerial rights, and by addressing Michael Carricato's (Grievant) *Loudermill* hearing,[1] which was raised in a separate grievance that the International Brotherhood of Teamsters, Local 776, Police Labor Organization (Union) voluntarily waived; (2) whether the Borough was denied procedural due process when the Arbitrator ruled against the Borough for failing to do something that was legally impossible for it to do; and (3) whether the standard of review for cases arising out of what is commonly referred to

---

[1] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

as Act 111[2] should encompass a public policy exception under the excess powers prong of narrow *certiorari*.  After review, we affirm.

The Borough hired Grievant as a police officer in March 2014.  In March 2017, the Borough Police Department (Department) referred a criminal investigation involving Grievant to the Adams County District Attorney's (DA) Office.[3]  At or around the same time, the Department placed Grievant on administrative leave with pay.  The Department returned Grievant to active service in early October 2017, except for his patrol duties, and notified the DA's Office.  Adams County DA Brian Sinnett (DA Sinnett) had periodic conversations with then-Chief of Police Joseph Dougherty (Chief Dougherty) before Grievant's return to work, including discussions about the DA not prosecuting any matters based solely upon Grievant's observations and testimony.  Chief Dougherty shared these discussions with Mayor Theodore Streeter (Mayor Streeter).

Upon Grievant's return to active service, Mayor Streeter sent a letter to DA Sinnett asking that DA Sinnett put the DA's determination concerning Grievant in writing.  By October 10, 2017 letter, DA Sinnett stated:

> I am in receipt of a letter dated October 3, 2017 from Mayor [] Streeter regarding [Grievant's] return to active duty.  As you are aware, [the D]epartment referred a criminal investigation involving this officer to my office and we have proceeded accordingly.  As a result of that investigation, while not complete, it is the position of this [DA's O]ffice that [it] will not participate in any future cases which are based solely upon the uncorroborated observations and testimony of [Grievant].  This is as a result of our pending investigation and information revealed as part of that[,] as well as the deliberative process of the [DA].

---

[2] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10.

[3] The record does not reveal the alleged crime, nor any underlying facts.

> I know you and I have discussed these matters periodically with some detail throughout the investigation. I wish to stress that I am sharing this with you solely as a law enforcement colleague and as the head of [the D]epartment. Please do not disseminate this letter or the information contained therein to any other non-law enforcement entity. I cannot stress this enough. Dissemination would result in this office potentially failing to interact with [the D]epartment as a whole going forward.
>
> I welcome the opportunity to discuss this matter with you at your convenience.

Reproduced Record (R.R.) at 228a.

Chief Dougherty shared the contents of DA Sinnett's letter with Borough Manager Charles Gable (Manager Gable). Chief Dougherty then met with Grievant on October 30, 2017. On November 8, 2017, Manager Gable and Mayor Streeter conducted a *Loudermill* hearing for Grievant, who attended with his Union representative. At the hearing, Grievant was told of the contents of DA Sinnett's letter, but the letter was not produced. Thereafter, Manager Gable met with Borough Council and recommended that Grievant's employment be terminated. Borough Council voted to discharge Grievant.

By November 14, 2017 letter, Manager Gable notified Grievant of his employment termination. On November 20, 2017, Grievant filed a grievance. The Borough denied the grievance and the matter proceeded to arbitration. The Arbitrator held a hearing on November 16, 2018. On May 9, 2019, the Arbitrator sustained the grievance, finding the Borough did not have just cause to terminate Grievant's employment. The Arbitrator ordered that Grievant be immediately reinstated and made whole with respect to pay and benefits (minus interim earnings), subject to Grievant satisfying all physical fitness for duty requirements, as well as any necessary training obligations. The Borough filed the Petition to Vacate, which the trial court denied on September 20, 2019. The Borough appealed to this Court.

At the outset,

> [j]udicial review of an arbitration award arising under [Act 111] is in the nature of narrow *certiorari.* Under this standard, a review in court is limited to questions regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceeding; (3) an excess of the arbitrator's powers; and (4) the deprivation of constitutional rights. The standard of review to be applied is two-fold. A court's review is a plenary, non-deferential standard where the resolution of the issues turns on a question of law or application of law to undisputed facts. However, where the question depends on fact-finding or upon interpretation of the collective bargaining agreement, the court is bound by the arbitrator's determination even if the arbitrator is wrong.

*City of Phila. v. Fraternal Order of Police, Lodge No. 5*, 181 A.3d 485, 489 (Pa. Cmwlth. 2018) (original bold emphasis omitted) (quoting *Town of McCandless v. McCandless Police Officers Ass'n*, 952 A.2d 1193, 1196 n.6 (Pa. Cmwlth. 2008)) (bold emphasis added; citations omitted).

The Borough first argues that the Arbitrator exceeded his powers by creating a new set of job duties in conflict with the CBA and infringing on the Borough's managerial rights. Specifically, the Borough contends that the Arbitrator's award forces the Borough to employ an officer who can no longer fulfill the required job duties specified in Article V of the CBA. The Borough cites *Department of Corrections, State Correctional Institution at Forest v. Pennsylvania State Corrections Officers Ass'n*, 173 A.3d 854 (Pa. Cmwlth. 2017) (*SCI-Forest*), to support its position that the award infringes on the Borough's managerial rights.

The Union rejoins that the Arbitrator did not exceed his powers, but rather, he properly determined that Grievant's discharge was not based on the contractually required just cause. The Union relies upon *City of Philadelphia v. Local International Ass'n of Firefighters, Local 22*, 999 A.2d 555 (Pa. 2010), as controlling.

4

Initially,

> the excess of powers prong of narrow *certiorari* focuses upon the particular action an [arbitrator] took in resolving an Act 111 dispute and asks whether the action was authorized. In [*City of Washington v. Police Department of the City of Washington*, 259 A.2d 437 (Pa. 1969)], [the Pennsylvania Supreme Court] stated:

>> Whether the decision maker in an adjudicatory process has been guilty of an excess in the exercise of power depends fundamentally on whether he has gone outside the boundaries of his authority. No adjudicatory body has unlimited discretion. At the very least, each and every adjudicator is bound by the Constitution of the United States; and most are bound by even tighter strictures. The restrictions may go to the nature of the controversies which they can decide, the parties who may appear before them, the type of relief they may grant, or any other element in the adjudicatory process.

> [*Id.*] at 441.

*Int'l Ass'n of Firefighters*, 999 A.2d at 564-65 (italics added).

> Article III of the CBA provides:

> It is recognized that the well-being of both parties to [the CBA] is directly dependent upon the skills and efficiency with which the police business of the Borough is conducted, and that any assumption of the functions of management by representatives of the Union is contrary to the intent and purpose of such [CBA]. The authority and responsibility for management of the police business and activities of the Borough shall rest with the Borough and its appointed or elected representatives, and the Union, or its representatives, shall not unlawfully interfere with the exercise of such authority and responsibility.

> The Union recognizes that management retains certain rights, and the management representatives of the Borough may exercise the following rights unless specifically modified by a term or provision of the [CBA]:

5

A. Hire, direct, transfer, assign, promote, retain, lay off and recall [p]olice personnel; **Discipline, including, but not limited to, suspension, demotion or discharge Officers only for just cause, subject to the provisions of this [CBA]** and applicable laws;

B. Determine the methods and means by which the operations of the [] Department are to be conducted, and to maintain the efficiency thereof; and

C. Nothing herein shall, in any manner, be construed as a waiver of any right guaranteed to municipal employees by the applicable Civil Service Acts of the Commonwealth pertaining to Borough Police Forces, or any terms of this [CBA].

R.R. at 3a-4a (emphasis added). Article V of the CBA describes:

The duties of a [p]olice [o]fficer covered by this [CBA] shall include the enforcement of all Borough ordinances, together with state and federal statutes, where that authority is delegated to them. Officers shall be required to perform any duties which are reasonably related to criminal law enforcement, crime prevention, police community relations, protection of life and property, public safety, the arrest and apprehension of offenders, or the enforcement of Borough ordinances which reasonably require the intervention of the [] Department.

R.R. at 4a. Article XXV of the CBA mandates:

A. In general, discipline shall be progressive, though certain offenses will justify, in and of themselves, the immediate use of suspension without pay or dismissal.

B. Discipline may take the form of demotion, a written reprimand, a suspension without pay, or dismissal (removal). **Demotions can be either non-disciplinary or disciplinary in nature**. **The nature of any demotion decision shall be specifically stated**.

C. The Pennsylvania courts hold [p]olice [o]fficers to a particularly high standard of conduct and this is a factor in disciplining [p]olice [o]fficers.

6

D. **Prior to the implementation of any discipline which would result in a loss of compensation, a non-probationary [p]olice [o]fficer shall receive a due process proceeding of the type required by [*Loudermill*].** However, any such *Loudermill* type proceedings shall not, in any way, constitute a waiver of any hearing rights or other rights afforded an [o]fficer pursuant to the Civil Service provisions of the Borough Code or this [CBA].

E. **The asserted basis for a non-disciplinary demotion may be challenged in the same manner as discipline may be challenged**.

F. An [o]fficer may challenge the imposition of discipline either through civil service procedures or the grievance procedure, but not both. Initiating an appeal in one of these forums shall be an election of that forum and a waiver of the alternative forum.

G. **All discipline must be for just cause**. In determining whether just cause existed for discipline, any trier of fact must reference the body of civil service case law which has been developed relative to the disciplining of [p]olice [o]fficers, including the case law which applies to the severity of the discipline imposed.

R.R. at 24a (emphasis added).

*SCI-Forest* did not involve an Act 111 arbitration; thus, the standard of review in *SCI-Forest* was the essence test, which does not include an excess of powers prong. In *SCI-Forest*, the grievant worked as a corrections officer at the State Correctional Institution at Forest (SCI-Forest). During the incidents at issue, the grievant was a maintenance rover. The duties for that post included supervising a crew of inmates in the maintenance annex of the prison. As a maintenance rover, the grievant supervised the crew of inmates that unloaded deliveries from delivery trucks and patrolled the area to maintain the security of the entrance and exit near the back dock. The grievant was discharged based on, *inter alia*, a video showing the grievant and inmates removing food and supplies from the trucks and storing them in a dumpster. The arbitrator in that case determined that the grievant should not be in a

7

position that requires his supervision of inmates. Although the arbitrator ruled the Department of Corrections (DOC) had just cause to discipline the grievant, he found that employment termination was not warranted and reinstated the grievant. On appeal, this Court held: "By reinstating [the g]rievant to a corrections officer position while placing a restriction on him that is irreconcilable with the statutory definition of correction officer, thereby infringing on [DOC's] managerial right to direct corrections officers at SCI-Forest, the [a]rbitrator's award failed to satisfy the essence test." *Id.* at 860.

Here, unlike in *SCI-Forest*, the Arbitrator did not find Grievant committed misconduct and place restrictions on Grievant as a result thereof. Rather, the Arbitrator opined: "I am unable to address the substantive merits of the Borough's termination decision in this case, since I find that the Borough failed to provide [] Grievant adequate procedural due process prior to terminating his employment." R.R. at 40a. In sum, the Arbitrator determined that, since Grievant was not given any basis for his discharge, and therefore no ability to defend himself at the required *Loudermill* hearing, the Borough "did not have just cause to fire him." R.R. at 43a. Accordingly, the Borough's reliance on *SCI-Forest* is misplaced as it is inapposite.

This Court concludes that the instant case is closely aligned with *International Ass'n of Firefighters*,[4] wherein the Pennsylvania Supreme Court explained:

> Given the General Assembly's intent in passing Act 111, . . . when reviewing a disputed [grievance] in an Act 111 [] arbitration award, a court should first inquire whether the [grievance] concerns a topic that is subject to the right of collective bargaining, *i.e.*, is rationally related to the terms and conditions of employment. If the topic is so subject,

---

[4] This Court acknowledges that *International Ass'n of Firefighters* involved an interest arbitration and although this case arises from a grievance arbitration, the standard of review is the same in both instances.

8

the court should next inquire whether the award also implicates the non-bargainable managerial prerogatives of a public employer. If the award does, the court must then determine whether the award unduly infringes upon the exercise of those managerial responsibilities. If the award does not unduly infringe upon their exercise, the award concerns a subject that lies within the scope of collective bargaining . . . , falls within the [arbitrator's] Act 111 powers, and is confirmable. If, however, the award unduly infringes upon the exercise of managerial responsibilities, then the award concerns a managerial prerogative that lies beyond the scope of collective bargaining, reflects an excess of the [arbitrator's] Act 111 powers, and is voidable.

*Int'l Ass'n of Firefighters*, 999 A.2d at 570-71.

Here, the disputed issue was whether Grievant was discharged for just cause, which is clearly controlled by the CBA. Further, the award reinstated Grievant on the basis of no just cause, which is also undoubtedly among the Arbitrator's powers. Consequently, "the award [does not] unduly infringe[] upon the exercise of [the Borough's] managerial responsibilities[.]" *Id.* at 571. Accordingly, the award does not "reflect[] an excess of the [Arbitrator's] Act 111 powers[.]" *Id.*

The Borough further argues that the Arbitrator exceeded his powers by addressing Grievant's *Loudermill* hearing, which was raised in a separate grievance that the Union voluntarily waived.

Initially, we note that the term 'just cause' was not defined by the parties in the [CBA]. By failing to agree upon and incorporate a definition of just cause into the [CBA], and by casting the [A]rbitrator into the role of resolving disputes arising under the [CBA], we believe that it is clear that the parties intended for the [A]rbitrator to have the authority to interpret the terms of the agreement, including the undefined term 'just cause' and to determine whether there was just cause for discharge in this particular case.

*Office of Attorney Gen. v. Council 13, Am. Fed'n of State, Cty. Mun. Employees, AFL-CIO*, 844 A.2d 1217, 1224 (Pa. 2004).

9

The Arbitrator reinstated Grievant because the Borough failed to provide Grievant adequate procedural due process at his *Loudermill* hearing by not telling him the reason for his employment termination. Article XXV(D) of the CBA expressly mandates:

> Prior to the implementation of any discipline which would result in a loss of compensation, a non-probationary [p]olice [o]fficer shall receive a due process proceeding of the type required by [*Loudermill*]. However, any such *Loudermill* type proceedings shall not, in any way, constitute a waiver of any hearing rights or other rights afforded an [o]fficer pursuant to the Civil Service provisions of the Borough Code or this [CBA].

R.R. at 24a. Because the due process rights were contained in the CBA, *see cf. Bethel Park Sch. Dist. v. Bethel Park Fed'n of Teachers, Local 1607*, 55 A.3d 154 (Pa. Cmwlth. 2012), the Arbitrator in the instant appeal did not exceed his powers by addressing Grievant's *Loudermill* hearing in his just cause determination.

The Borough next asserts that it was denied procedural due process when the Arbitrator ruled against the Borough for failing to do something that was legally impossible for it to perform. Specifically, the Borough contends that the Arbitrator concluded that the Borough had an obligation under *Loudermill* to inform Grievant about why the DA's Office no longer intended to prosecute cases involving Grievant, as outlined in DA Sinnett's October 10, 2017 letter. The Borough maintains that it did not possess, has never possessed and could not lawfully obtain that information. The Union responds that the Borough was not denied the opportunity to offer testimony or evidence but, rather, the Borough had a full and fair opportunity to be heard, to present evidence, to authenticate evidence subject to dispute and proper objection and, nonetheless, chose not to avail itself of what it now says was an essential element of its case. As such, it cannot be said that the

Borough's procedural due process rights were in any way compromised in the arbitration proceeding, much less denied.

The Borough cites *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259 (Pa. 2009), to support its position. In *Breary*, after the union subpoenaed documents from the City of Philadelphia (City) for an arbitration hearing, and the City did not provide them, the union requested sanctions. The arbitrator continued the hearing for oral argument on the sanctions. In the interim, the City discovered that the subpoenas were not honored due to a clerical error and provided the documents two weeks before the next hearing date. The arbitrator nevertheless precluded the City from presenting any evidence relating to the subpoenaed documents as a sanction for not immediately providing the documents. This Court vacated the arbitrator's award in favor of the union because preclusion of all evidence was essentially a dismissal of the case in violation of the City's due process rights. The Pennsylvania Supreme Court affirmed this Court's decision.

Here, the Borough is essentially asking this Court to find that the Borough's denial of Grievant's due process rights in not providing the reasons for his dismissal is justified because the Borough could not obtain said information, and for the Arbitrator to base his award on the Borough's failure to provide said information denied the Borough its due process rights. This Court cannot draw such a conclusion. The Borough chose to discharge Grievant due to a letter for which the underlying basis was unknown. Thus, the Borough put it itself in a situation wherein it could not provide the required information, not the Arbitrator. Accordingly, the Borough's due process rights were not violated.

Lastly, the Borough asserts that the standard of review for Act 111 cases should encompass a public policy exception under the excess powers prong of narrow *certiorari*. The Pennsylvania Supreme Court rejected that contention in *Pennsylvania*

11

*State Police v. Pennsylvania State Troopers Ass'n (Smith & Johnson)*, 741 A.2d 1248 (Pa. 1999), as follows:

> Broadening the narrow *certiorari* scope of review to include a provision which would allow the courts to interfere with an arbitrator's award whenever that award could be deemed to be violative of 'public policy' - however that nebulous concept may be defined by a particular appellate court - would greatly expand the scope of review in these matters. If we were to adopt [the appellant's] recommendation to include this ill-defined term within the narrow *certiorari* scope of review, we would markedly increase the judiciary's role in Act 111 arbitration awards. This would undercut the legislature's intent of preventing protracted litigation in this arena.

*Id.* at 1252-53 (italics added). Accordingly, the standard of review for Act 111 cases does not encompass, and this Court will not expand it to include, a public policy exception under the excess powers prong of narrow *certiorari*.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Gettysburg,           :
                 Appellant     :
                                :
           v.                :
                                :
International Brotherhood of Teamsters, :    No. 1460 C.D. 2019
Local 776, Police Labor Organization    :

## O R D E R

AND NOW, this 5th day of June, 2020, the Adams County Common Pleas Court's September 20, 2019 order is affirmed.

_____
ANNE E. COVEY, Judge