**AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 87, Appellant**

v.

**COUNTY OF LACKAWANNA.**

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2014.

Decided Oct. 24, 2014.

John R. Bielski, Philadelphia, for appellant.

Lars H. Anderson, Kingston, for appellee.

BEFORE: BERNARD L. McGINLEY, Judge, and MARY HANNAH LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

The American Federation of State, County and Municipal Employees, District Council 87 (Union) appeals an order of the Court of Common Pleas of Lackawanna County (trial court) denying Union's motion to vacate an arbitration award. The arbitrator held that the County of Lackawanna (County) did not violate the anti-discretion or seniority clauses in the collective bargaining agreement by hiring a female detention officer to deal with female juvenile offenders, as it had been ordered to do by the trial court. Union argues that the trial court erred because the arbitrator's award did not draw its essence from the collective bargaining agreement. Concluding that the trial court did not err, we affirm.

On June 17, 2010, the Court of Common Pleas of Lackawanna County, by the Honorable Trish Corbett, entered an order, later memorialized in writing on September 15, 2011, directing the County to hire a female detention officer to work the day shift from 7:00 a.m. to 3:00 p.m. at the County's juvenile detention facility (Juvenile Facility). The County did so, and Union responded with two grievances. The matter went before an arbitrator in accordance with the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§ 1101.101–1101.2301 (PERA).[1] At the grievance hearing, Union presented the testimony of Frank Galli, steward of the Juvenile Facility. The County presented the testimony of Clifford Hoffman, the director of the Juvenile Facility, and Nancy Pearson, the deputy director of human resources for the County.

The Juvenile Facility is an all-male juvenile detention center and is the only juvenile detention center in Lackawanna County. The Juvenile Facility may not house female offenders, who must be transferred to a female juvenile detention facility. The nearest female juvenile detention facilities

---

1. One grievance filed by Union concerns the County's requirement that the Juvenile Facility must hire a non-senior female officer, which is contrary to the terms of the CBA. The other grievance concerns the detention officer that was displaced by the hiring of a female detention officer. Both grievances rely on the same set of facts and arguments.

are in Tioga and Lancaster counties. The Juvenile Facility is responsible for transporting female juvenile offenders to one of these neighboring detention facilities.

Because the Juvenile Facility may not place female offenders in its cells, these offenders must wait in the Juvenile Facility's office until transportation can be arranged. Due to flight concerns, an officer must sit with female offenders while they wait for transportation. The Juvenile Facility's policy requires the presence of a female officer when female offenders are transported to neighboring juvenile detention facilities. According to Hoffman,

> it's better to have a female. There's times we've actually had to pull over a car and restrain a female because she would get out of hand in the back of our vehicle. And like I said, it's a liability to let a female go into a bathroom by herself. You don't know if she's actually smuggled anything with her. So, it's definitely a plus and it also saves liability towards the county if two males are in the car driving a female down. The female could accuse the two males of anything she pretty much wants. A female with us lends more credibility to nothing has happened.

Reproduced Record at 77a (R.R.——). Because the Juvenile Facility has only male employees, female offenders cannot be transferred until the County can arrange to have female employees from other departments supervise the transfer.

Frequently, it takes an entire shift to find a female employee, usually a female probation officer, who is available for the transfer. Hoffman explained the complications that arise from this situation:

> [W]e took volunteers from the juvenile and adult probation departments, they're all females. They're actually

working for me at that time, they're not on their traditional work hours. I can't interfere with the traditional work hours of any of the probation officers. They're doing it, actually, on their own. And they're on a paid on call status.

R.R. 74a. Hoffman explained that when a female probation officer is not available, the "female [offender] would have to sit until 4:00 pm. . . . So that means that somebody could be locked up at 10:00 a.m. and have to sit until 4:00 before they even get on the road." R.R. 78a. Additionally, according to Hoffman, the "average round trip is six hours." R.R. 71a. Hoffman also testified that between 50 and 80 percent of all female juvenile offender transfers occur during the day shift.

Hoffman testified about problems that developed with the Juvenile Facility's transfer system in 2010:

> Our number of transports really increased in 2010. In the past, like I said, we've done 10 females, 18 females in one year and our population shot up to 53 in 2010. And then plus that, with the layoffs and everything within the county, other departments were also shorthanded and couldn't loan us anybody to do those transports anymore.

R.R. 82a. These problems came to the attention of the trial court, specifically, the Honorable Trish Corbett, who had presided over "several cases" where "females [were] getting locked up at 10 or 11 o'clock in the morning and [had] to wait until 4 o'clock in the afternoon to be transported." R.R. 86a. On June 17, 2010, Judge Corbett, apparently *sua sponte,* ordered the Juvenile Facility to hire a female detention officer for the day shift. Accordingly, on August 6, 2010, the Juvenile Facility posted a job opening on its website, stating that it was seeking a female juvenile detention officer.[2]

Shortly thereafter, in October of 2010, Juvenile Detention Officer Finlon was hired to fill the position. She was hired even though twelve other male officers outranked her in seniority. Moreover, Officer Finlon's hiring required a male officer, Chris Gardir, who had previously worked the day shift at the Juvenile Facility, to be moved to another shift.[3]

In October and December of 2010, Union filed two grievances to challenge the hiring of Officer Finlon, which, it asserted, violated the CBA provision forbidding the consideration of gender in hiring decisions. The matter went before an arbitrator. The arbitrator held that the County did not violate the CBA. Union filed a petition with the trial court to vacate the arbitrator's order. The trial court denied Union's motion on January 8, 2014, and Union appealed to this Court.

On appeal, Union contends the arbitrator's award must be vacated because it fails to satisfy the "essence test," which requires that an arbitrator's award draw its essence from a collective bargaining agreement. Specifically, Union contends that the arbitrator's award was not rationally derived from the terms of the CBA for four reasons. First, the arbitrator's award contradicts the CBA's proscription against gender bias in hiring. Second, the arbitrator focused on Union's delay in filing a grievance, which was irrelevant. Third, the arbitrator misinterpreted the provision of the CBA that requires female personnel

for transportation of female detainees. Fourth, the trial court lacked the authority to order the County to hire a detention officer at the Juvenile Facility. The County counters that because this Court must give deference to the arbitrator's award, we may not substitute our interpretation of the CBA for the arbitrator's.

We begin by examining an appellate court's standard of review of an arbitrator's award. In *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 595 Pa. 648, 939 A.2d 855, 857 (2007), our Supreme Court reaffirmed that "the essence test [is] the proper standard to be employed by a court when reviewing a grievance arbitration award." In *Westmoreland*, a classroom assistant was fired after she suffered a bad reaction while wearing a Fentanyl patch on school grounds for which she did not have a prescription. Her union filed a grievance, arguing that the school lacked just cause for discharging her. The matter went before an arbitrator who agreed with the union. Accordingly, the arbitrator reinstated the classroom assistant, without back pay and with strict rehabilitation requirements.

On appeal, our Supreme Court observed:

If the heart of PERA is Section 401, which recognizes the right of certain public employees to organize for pur-

2. The job opening on the website was titled "Juvenile Detention Officer." R.R. 48a. The job description read:

The purpose of this job is to maintain order and supervise the conduct of the residents at the Lackawanna County Juvenile Detention Center. The female detention officer is responsible for the prevention of escape, through physical means if necessary, maintaining discipline, and providing guidance

to the residents during their adjustment and stay at the detention center and will also be responsible for assisting all female juvenile detainees before and after sentencing.
R.R. 48a.

3. Detention Officer Gardir has been permitted to remain employed during the day shift until the present matter is resolved.

poses of collective bargaining,[4] . . . then its lifeblood is the requirement that labor disputes arising under a collective bargaining agreement be resolved by final and binding arbitration.[5]

*Westmoreland,* 939 A.2d at 861 (internal citations omitted). Our Supreme Court further explained that because our legislature's intent in enacting PERA was to reduce the expense of litigation and increase the speed and efficiency of resolving disputes, it should remain a rare circumstance where a court overturns an award of an arbitrator. According to the Supreme Court, "regular vacating of arbitration awards . . . would add time and expense to the process and it would take the resolution of disputes from a person chosen by the parties and give it to a court to decide." *Id.* at 862. Therefore, "[t]he standard [of review] is one characterized by great deference." *Id.*

The Supreme Court then reaffirmed the deferential "essence test" for judicial review of arbitration awards, explaining the appropriate analysis as follows:

First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement.

*Id.* at 863 (quoting *State System of Higher Education (Cheyney University) v. State College and Professional Association (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405, 413 (1999)). The Court explained the essence test more succinctly: "a court will only vacate an arbitrator's award where the award is *indisputably and genuinely without foundation in,* or fails to logically flow from, *the collective bargaining agreement." Westmoreland,* 939 A.2d at 863 (emphasis added). With this deferential standard of review in mind, we consider Union's arguments, which concern only the second prong of the essence test, *i.e.,* whether the arbitrator's award is rationally derived from the CBA.

4. Section 401 of PERA states:
 It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement.
 43 P.S. § 1101.401.

5. The requirement referenced by the Pennsylvania Supreme Court comes from Section 903 of PERA, which states:
 Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tripartite board of arbitrators as the parties may agree. Any decisions of the arbitrator or arbitrators requiring legislation will only be effective if such legislation is enacted:
 (1) If the parties cannot voluntarily agree upon the selection of an arbitrator, the parties shall notify the Bureau of Mediation of their inability to do so. The Bureau of Mediation shall then submit to the parties the names of seven arbitrators. Each party shall alternately strike a name until one name remains. The public employer shall strike the first name. The person remaining shall be the arbitrator.
 (2) The costs of arbitration shall be shared equally by the parties. Fees paid to arbitrators shall be based on a schedule established by the Bureau of Mediation.
 43 P.S. § 1101.903.

■ Union first contends that the arbitrator's award contradicts Article 15 of the CBA, which states:

Section 1. All promotions shall be filled by employees already in the bargaining unit who possess the seniority, skill and ability to perform such duties when skills and ability are equal, seniority of the employee shall prevail. When a vacancy occurs within a classification (for shifts, days off, preferred duties etc.) *the person possessing the minimum skill and most seniority shall prevail.*

Section 2. Posting of Vacancies

When the County determines to fill a vacancy (including newly created positions or additions to the present complement) in the bargaining unit at the Prison, the County will post notice of such vacancy for a period of ten (10) work days. The notice shall state which job(s) are open, how many openings exist, what qualifications are required, how the bid is to be made and what is the time limit for filing the same. The County and Union discourage the costly practice of indiscriminate bidding for individual convenience or temporary advantage. For promotions and transfers, the County will fill the vacancy within thirty (30) days from the last date of the posting. For external hires, the County will fill the vacancy within ninety (90) days of the last date of the posting. Employees who wish to apply for the vacancy shall in writing indicate their qualification for the job and file their bid within the prescribed time limit.

Section 3. Bumps and Bids: All positions will be posted and bid in January of each year, which all Correctional Officers and Sergeants at the Prison and all Juvenile Detention Officers at the Detention Center shall have the right to bid by seniority *regardless of gender.* Any vacancy that occurs during the year (except promotions) will be posted and awarded to the most senior employee who has not previously executed a bid. Employee shall have only one bid per calendar year. Submitting a bid for employee's current shift while required shall not be considered a bid for this purpose.

R.R. 19a–20a (emphasis added).[6] Union contends that the arbitrator's award cannot be sustained because it "undermined the importance that the CBA places in seniority[.]" Brief of Appellant at 22.

The problem with Union's argument is that it ignores the arbitrator's reliance on Article 29, Section 11 of the CBA, which states: "Juvenile Detention officers who are required to transport female detainees must be accompanied by qualified female personnel." R.R. 33a. Union argues that the Arbitrator erred in equating "female personnel" with "female Detention Officers." Essentially, Union asks this Court to substitute its judgment for the arbitrator on how to reconcile conflicting provisions of the CBA. The essence test does not permit this Court to vacate an arbitrator's award even if we disagree with the arbitrator's interpretation of the CBA. *Central Susquehanna Intermediate Unit Education Association v. Central Susquehanna Intermediate Unit #16,* 74 Pa. Cmwlth. 248, 459 A.2d 889, 890 (1983). The arbitrator resolved the meaning of different provisions in the CBA in favor of the specific provision in Article 29, which specified a female must be involved in transporting female detainees. We cannot

---

**6.** Union also cites other provisions of the CBA relating to hiring and promotion as evidence that the arbitrator's award does not rationally derive from the CBA. However, because the Union cites these provisions to bolster its argument that the arbitrator incorrectly *interpreted* the CBA, the cited provisions do not change our analysis or conclusion.

say that the arbitrator's interpretation was not rationally derived from the CBA, *i.e.*, "indisputably and genuinely [is] without a foundation in ... the collective bargaining agreement." *Westmoreland,* 939 A.2d at 863.

Next, Union contends that "the Arbitrator erroneously argue[d] that somehow AFSCME's failure to file a grievance when the job was originally posted undermines Union's challenge to the County's failure to allow for bidding to fill the position." Union Brief at 23. This argument lacks merit. Although the arbitrator did make this complaint, it was *obiter dictum.* It did not affect the outcome, which turned on the arbitrator's conclusion that Article 29 of the CBA trumped Article 15.

 In its third argument, Union contends that Article 29 does not trump Article 15 because "[n]either [Union] nor the County relied upon Article 29, Section 11 in their [sic] presentations at the hearing." Union Brief at 24. An arbitrator's interpretation of a CBA is guided by general contract construction principles. *Greater Nanticoke Area School District v. Greater Nanticoke Area Education Association,* 760 A.2d 1214, 1219 (Pa.Cmwlth.2000). A contract's construction requires a consideration of the entire contract to decipher its intent. *Keenan v. Scott Township Authority,* 151 Pa.Cmwlth. 225, 616 A.2d 751, 754 (1992). Here, the arbitrator's examination of the entire CBA was consistent with, not contrary to, his obligation to make an award that draws its essence from the collective bargaining agreement.

 In its final assignment of error, Union contends that Judge Corbett lacked the authority to make hiring decisions for the Juvenile Facility. According to Union, the arbitrator erred in concluding that the trial court was "specifically charged with oversight of the Juvenile Detention Center." Arbitrator's Award, April 22, 2013,

at 6. Our Supreme Court has held that the "courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice." *Sweet v. Pennsylvania Labor Relations Board, County of Washington,* 457 Pa. 456, 322 A.2d 362, 365 (1974). In the case *sub judice,* Judge Corbett ordered the Juvenile Facility to hire a female detention officer for the day shift in order to transport female juvenile detainees to female detention facilities in a reasonably prompt manner. This appears related to the "administration of justice." However, it matters not to this appeal whether the trial court's order was appropriate or not. A trial court's order cannot be set aside by an arbitrator but only by a court of law. Union never appealed or challenged the court order that triggered the County's hiring of Officer Finlon to a tribunal with jurisdiction to correct an improvident court order. The arbitrator was not such a tribunal.

For the foregoing reasons, we affirm.

### ORDER

AND NOW, this 24th day of October, 2014, the order of the Court of Common Pleas of Lackawanna County dated January 8, 2014, in the above-captioned matter is hereby AFFIRMED.

DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that "[t]he arbitrator resolved the meaning of different provisions in the CBA in favor of the specific provision in Article 29, which specified a female must be involved in transporting female detainees. We cannot say that the arbitrator's interpretation was not rationally derived from the CBA." Opinion at 1290–91.

In *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA,* 595 Pa. 648, 939 A.2d 855, 863 (2007), our Pennsylvania Supreme Court enunciated the two-prong approach to judicial review of grievance arbitration awards:

'First the court shall determine if the issue as properly defined is within the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, *the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement.'* [*State System of Higher Education*] *Cheyney University* [*v. State College and University Professional Association (PSEA–NEA),* 560 Pa. 135], 743 A.2d [405], 413 [ (1999) ]. *'That is to say a court will only vacate an arbitrator's award where the award is indisputably and genuinely without foundation in, or fails to logically flow from, the collective bargaining agreement.'* *Id.* Regarding a review for reasonableness, we rejected such review, finding that it would invite a reviewing court to substitute its own interpretation of the contract language for that of the arbitrator. *Id.* Therefore, we instructed that a court should not engage in merits review of the matter. Indeed, after our reaffirmance of the circumscribed essence test we made it eminently clear that 'the essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is 'manifestly unreasonable.' *Pennsylvania Game Commission v. Civil Service Commission (Toth)* [561 Pa. 19], 747 A.2d 887, 891 [ (2000) ] . . . . (emphasis added and citations omitted).

"While there is no dispute amongst the parties that the first prong of the essence test is met, the Union argues, and the County disputes, that the Arbitrator's decision is *not* rationally derived from the CBA." (Emphasis in original.) Brief of Appellant at 21.

Article 8 (Seniority Probationary Periods), Section 1 of the CBA provides that *"[s]eniority shall be bargaining unit wide by classification and is defined as the length of an employee's continuous service with the County . . . ."* (emphasis added).

Article 9 (Assignment of Work/Temporary Transfers) of the CBA provides:

Section 4. *No later than the first day of each contract year, employees shall be allowed to bid for shift assignment and then for two (2) consecutive days off in accordance with their seniority.* The shift and days so bid shall be permanent for duration of the calendar year, unless a vacancy occurs, *except that if it is necessary for the County to transfer an employee to a different shift it shall transfer the least senior qualified in the classification which must be filled;* if there is no employee in that classification, the employer shall select the least senior qualified employee who is capable of fully and immediately performing the job. (emphasis added).

Upon providing reasonable notice to the Warden and/or Director of Juvenile Detention Center, the Warden and/or Director of Juvenile Detention Center may permit employees to exchange days off with the understanding that the overtime provision will not be applicable in this instance.

Article 10 (Layoffs), Section 10 of the CBA provides that "[f]or *purposes of this Article bargaining unit seniority is defined as the employee's length of last continuous service with the County Prison and/or Juvenile Detention Center . . . ."* (emphasis added).

Article 15 (Promotions and Transfers) of the CBA provides:

Section 1. All promotions shall be filled by employees already in the bargaining unit who possess the seniority.

. . .

. . . .

Section 3. Bumps and Bids: *All positions will be posted and bid in January of each year, which all Correctional Officers and Sergeants at the Prison and all Juvenile Detention Officers at the Detention Center shall have the right to bid by seniority regardless of gender. Any vacancy that occurs during the year (except promotions) will be posted and awarded to the most senior employee who has not previously executed a bid.* Employee shall have only one bid per calendar year. Submitting a bid for employee's current shift while required shall not be considered a bid for this purpose. (emphasis added).

Lastly, Article 29 (Miscellaneous Provisions), Section 7 of the CBA provides that *"[t]he County shall furnish to the Union President a seniority list of all full-time employees* and the one regular part-time employee every six (6) months." (Emphasis added.) Article 29, Section 11 further provides that "Juvenile Detention Officers who are required to transport female detainees must *be accompanied by qualified female personnel."* (Emphasis added.)

In *Greater Nanticoke Area School District v. Greater Nanticoke Area Education Association,* 760 A.2d 1214, 1219 (Pa. Cmwlth.2000), this Court stated:

Nevertheless, to say that an arbitrator must consider extrinsic evidence in interpreting a CBA is not to say that the law draws no distinction between ambiguous and unambiguous language in the arbitration context. The *intent of the parties to a CBA, like any other contract, is deemed to be embodied in*

*'what the agreement manifestly expressed, not what the parties may have silently intended.' Delaware County v. Delaware County Prison Employees Indep[endent* 552 Pa. 184], 713 A.2d [1135,] 1138 [ (1998) ]. *Thus, 'when the words [of a CBA] are clear and unambiguous the intent is to be gleaned exclusively from the express language of the agreement.' Id.* at 1137. This statement should not be read in the sense of exclusion or disregard of evidence, as though we expect an arbitrator to act like a trial judge and rule on the question of ambiguity, then based upon this ruling 'charge' himself as factfinder whether to consider or disregard the extrinsic evidence. To infer from this statement that an arbitrator should shut his eyes to probative evidence would place Delaware County at odds with other recent decisions of the court, and we do not so read it. Rather, Delaware County stands only for the principle that *where the contract language is truly susceptible of only one meaning, and thus unambiguous as a matter of law, the arbitrator may not deem it to mean something else.* (emphasis added and footnote omitted).

Clearly, the contract language of the CBA was unambiguous that seniority would be the paramount factor when deciding who was eligible for work assignments, temporary transfers, bidding, bumping, promotions, and transfers as indicated in Articles 8, 9, 10, and 15 of the CBA. However, the Arbitrator elected to ignore this unambiguous contract language of the CBA in favor of Article 29, Section 11 of the CBA. Article 29, Section 11 of the CBA does not address seniority and does not define the term "qualified female personnel." However, the Arbitrator interpreted the term to mean a full-time "Juvenile Detention Officer" without regard to

seniority when she fashioned the Arbitration Award.[1]

I believe that the Arbitrator's interpretation that the County was authorized to place a probationary employee into a day shift position without regard to the seniority provisions of the CBA regarding bidding on shifts and job openings was not rationally derived from the CBA. I would reverse the decision of the common pleas court and vacate the arbitrator's award.

1. As noted by the Union in its brief, "[n]either AFSCME nor the County relied upon Article 29, Section 11 in their presentations at the hearing. R.[R.] 49a–99a. Nor did AFSCME cite Article 29 in its grievances. See R.[R.] 1a, 2a." Brief of Appellant at 24.