IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Riverside School District           :
                                    :
          v.                    :
                                      :
Riverside Educational Support     :
Personnel Association ESP-PSEA-NEA, :   No. 1771 C.D. 2019
              Appellant        :   Argued:  September 15, 2020


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED:  October 9, 2020


          Riverside Educational Support Personnel Association ESP-PSEA-NEA (Association) appeals the November 22, 2019 order of the Court of Common Pleas of Lackawanna County (trial court) vacating an arbitration award entered under the Public Employe Relations Act (PERA),[1] that directed the Riverside School District (District) to award a vacant instructional paraprofessional position to a member of the Association's bargaining unit.  Upon review, we affirm.

          The District and the Association are parties to a collective bargaining agreement effective July 1, 2016, through June 30, 2021 (CBA).  *See* Petition to Review and Vacate Award of Arbitrator (Petition to Vacate Arbitration Award) at 2, Reproduced Record (R.R.) at 5a; CBA, R.R. at 14a-52a.  The CBA covers the terms of the employment of paraprofessionals within the District, including

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

Association paraprofessionals. *See* Petition to Vacate Arbitration Award at 2, R.R. at 5a; *see also* CBA, R.R. at 14a-52a.

The present dispute pertains to Article XIV of the CBA, which concerns the posting and filling of vacant positions within the District. *See* CBA at 23-24, R.R. at 40a-41a. In the fall of 2016, an instructional paraprofessional[2] position became vacant in the District following the resignation of a District employee. *See* Trial Court Opinion and Order dated September 11, 2018 (First Trial Court Opinion) at 1, R.R. at 179a; *see also* Petition to Vacate Arbitration Award at 2, R.R. at 5a. To fill the vacancy, the District posted the instructional paraprofessional position per the requirements of Article XIV of the CBA on November 15, 2016, and again on December 13, 2016.[3] *See* First Trial Court Opinion at 1, R.R. at 179a; Petition to Vacate Arbitration Award at 2, R.R. at 5a. The District received numerous applications for the instructional paraprofessional position and selected and ranked seven individuals to participate in a first round of interviews. *See* First Trial Court Opinion at 1-2, R.R. at 179a-80a; Petition to Vacate Arbitration Award at 2-3, R.R. at 5a-6a. Two of these seven candidates were Association bargaining unit members: Lori Bradley, a personal care assistant, and Marion Maurer, a lunch monitor. *See*

---

[2] The State Board of Education's regulations recognize two types of paraprofessionals that help provide special education services and programs to children with disabilities in Pennsylvania's public schools: instructional paraprofessionals and personal care assistants. "An instructional paraprofessional is a school employee who works under the direction of a certificated staff member to support and assist in providing instructional programs and services to children with disabilities or eligible young children." 22 Pa. Code § 14.105(a)(1). "A personal care assistant provides one-to-one support and assistance to a student, including support and assistance in the use of medical equipment[.]" 22 Pa. Code § 14.105(a)(4).

[3] The exact information included in the position posting cannot be determined, as the record includes neither a copy of the posting nor a transcript of the arbitration hearing conducted in this matter. *See* Trial Court Opinion and Order dated November 22, 2019 (Second Trial Court Opinion) at 2 n.1; Reproduced Record (R.R.) at 366a.

2

First Trial Court Opinion at 1-2, R.R. at 179a-80a; Petition to Vacate Arbitration Award at 3, R.R. at 6a. The District ranked Ms. Bradley and Ms. Maurer third and fourth, respectively, based on qualifications prior to the first interview. *See id.* The District ranked non-bargaining unit member Kathy Taylor first among the candidates prior to the initial round of interviews. *See id.*

Following the initial interviews,[4] the District again ranked and selected individuals for further consideration in a second interview. *See* First Trial Court Opinion at 2, R.R. at 180a; Petition to Vacate Arbitration Award at 3, R.R. at 6a. Following this second ranking procedure, Ms. Taylor again stood atop the District's list of candidates, with Ms. Bradley and Ms. Maurer again ranked third and fourth, respectively. *See* First Trial Court Opinion at 2, R.R. at 180a; Petition to Vacate Arbitration Award at 3, R.R. at 6a. The District, through its Superintendent, conducted the second round of interviews on December 30, 2016. *See* First Trial Court Opinion at 2, R.R. at 180a; Petition to Vacate Arbitration Award at 4, R.R. at 7a. The second round of interviews included an academic proficiency test derived from the District's second grade mathematics and ELA booklets. *See* First Trial Court Opinion at 2, R.R. at 180a; Petition to Vacate Arbitration Award at 4, R.R. at 7a. After the interviews, the District's Superintendent again ranked Ms. Taylor as the top candidate, followed by Ms. Bradley and Ms. Maurer.[5] *See* First Trial Court Opinion at 2, R.R. at 180a; Petition to Vacate Arbitration Award at 4, R.R. at 7a. On

---

[4] The initial interviews were conducted by the District's Director of Special Education and a principal of one of the District's elementary schools, who asked the candidates behavioral questions about past experiences and situational questions about how they would act in hypothetical scenarios involving students. *See* Arbitration Award dated December 9, 2017 (Arbitration Award) at 6, R.R. at 59a.

[5] The second-ranked candidate withdrew from consideration for the position on December 29, 2016, immediately prior to the second round of interviews. *See* R.R. at 6a-7a, 57a.

3

January 9, 2017, the Riverside School District Board of Education unanimously voted to hire Ms. Taylor for the vacant paraprofessional position. *See* First Trial Court Opinion at 2, R.R. at 180a; Petition to Vacate Arbitration Award at 4, R.R. at 7a.

On January 20, 2017, the Association filed a grievance alleging that the District violated the CBA by hiring a non-bargaining unit member to fill the vacant instructional paraprofessional position (Grievance). *See* Grievance Report Form, R.R. at 84a-85a; First Trial Court Opinion at 3, R.R. at 181a. Following the denial of the Grievance, an arbitration hearing occurred before Walter Glogowski (Arbitrator) on September 28, 2017. *See* Grievance Report Form at 1, R.R. at 84a; First Trial Court Opinion at 3, R.R. at 181a; Arbitration Award dated December 9, 2017 (Arbitration Award) at 2, R.R. at 55a. On December 9, 2017, the Arbitrator issued an award that sustained the Grievance, stating:

> There is no question that the [CBA] provides the District the right to establish the qualifications and competency of candidates when filling vacancies or newly created positions. The fact that the District bargained and agreement [sic] for more than eighteen years and that during that period of time the District has posted hundreds of positions that have been filled by bargaining unit members has been well established. I am not persuaded that the District has the unfettered right to add new requirements to a posting once a position is posted and bargaining unit members applied for the position. There is no doubt in my mind that there has been a well-established "past practice" over the period of time since the Association was granted bargaining rights.

4

Arbitration Award at 8, R.R. at 61a. The Arbitrator then directed the District to award the instructional paraprofessional position to one of the Association's bargaining unit members. *See* Arbitration Award at 9, R.R. at 62a.

On January 8, 2018, the District filed the Petition to Vacate Arbitration Award. *See generally* Petition to Vacate Arbitration Award, R.R. at 4a-62a. Following argument, on September 11, 2018, the trial court remanded the matter to the Arbitrator to make further findings of fact regarding specific alleged past practices and whether the District's alleged past practice of not adding supplemental requirements to job postings antedated the CBA. *See* First Trial Court Opinion, R.R. at 179a-83a.

In response to the trial court's remand, without taking additional evidence, the Arbitrator issued a supplemental arbitration award dated March 20, 2019 (Supplemental Arbitration Award). *See* Supplemental Arbitration Award, R.R. at 247a-49a. After a brief statement of procedural posture,[6] the Supplemental Arbitration Award stated:

The following are the key factors in this case:

---

[6] The Arbitrator stated:

> This brief decision is the result of the [District] appealing the above[-]captioned Award to the 45th Judicial District and the ruling by the [trial court]. [The trial court] remanded the case back to the [A]rbitrator to make a finding of fact for the implementation of the Award. The case was sent back to the Arbitrator solely due to a lack of a transcript!
>
> Based on the [trial court's] ruling, the following decision is based solely on facts, documents and testimony presented at the hearing held on September 28, 2017, which has not been refuted by the [District]. There is no dispute as to what took place!

Supplemental Arbitration Award at 2, R.R. at 248a (emphasis in original).

5

1. That the [District] for two decades hired only bargaining unit members to fill vacant or newly created positions.

2. There was never an academic, educational or mental test as part of the application or interview process.

3. The [District] on December 30, 2016 unilaterally added the testing requirements after the interviewing process was started.

4. That there would not have been an additional cost to the [District] by hiring or transferring a bargaining unit member(s).

5. Due to the fact that there is not a "Past Practice Clause" in the [CBA] does not preclude a "Past Practice" to exist! A "Past Practice" is defined as follows: "A Past Practice is a long standing, frequent practice that is accepted and known about by the union and management. A Past Practice that meets the standards of a bona fide past practice is considered to be part of the Contract."

6. There was no transcript of the case solely due to the fact that the [District]/[Association] did not request one due to the additional unnecessary cost to either party!

Supplemental Arbitration Award at 2-3, R.R. at 248a-49a (exclamation marks in original). After presenting these "key factors," the Arbitrator made the following award:

**AWARD**

THEREFORE, after a complete and thorough review of all of the facts, document [sic], testimony, evidence, argument and discussion surrounding this case I have concluded that my original signed and dated award on January 9, 2017 stands as presented!

6

Supplemental Arbitration Award at 3, R.R. at 249a (exclamation mark in original).

After hearing further argument, on November 22, 2019, the trial court issued a second Opinion and Order vacating the Arbitration Award. *See* Trial Court Opinion and Order dated November 22, 2019 (Second Trial Court Opinion), R.R. at 365a-71a. The Association then appealed to this Court.

On appeal, the Association claims the trial court erred in vacating the Arbitration Award because it misapplied the essence test and concluded that the Arbitration Award was not rationally derived from the CBA. *See* Association Brief at 6, 24-37. Additionally, the Association argues that the trial court improperly concluded that the CBA's integration clause prohibited the Arbitrator from relying on evidence of past practice between the District and the Association. *See id.* at 6, 38-49. Finally, the Association claims the trial court erred by exceeding its authority and "second guessing" the Arbitrator's findings of fact and determinations. *See id.* at 6, 49-53.

Appellate review of a grievance arbitration award is conducted pursuant to the two-part "essence test." *Sch. Dist. of Phila. v. Phila. Fed'n of Teachers*, 164 A.3d 546, 552 (Pa. Cmwlth. 2017).

> First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999); *see also Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007). Thus, "[a]n arbitrator's award must be sustained 'if it is based on anything that can be gleaned as the 'essence' of the [collective bargaining agreement].'" *Pa. State Sys. of Higher Educ. v. Ass'n of Pa. State Coll. & Univ. Faculties*, 98 A.3d 5, 14 (Pa. Cmwlth. 2014) (quoting *Am. Fed'n of State, Cty. & Mun. Emps., Dist. Council 84, AFL–CIO v. City of Beaver Falls*, 459 A.2d 863, 865 (Pa. Cmwlth. 1983)). Further, "[t]he essence test does not permit this Court to vacate an arbitrator's award even if we disagree with the arbitrator's interpretation of the [collective bargaining agreement]." *Am. Fed'n of State, Cty., & Mun. Emps., Dist. Council 87 v. Cty. of Lackawanna*, 102 A.3d 1285, 1290 (Pa. Cmwlth. 2014) (citing *Cent. Susquehanna Intermediate Unit Educ. Ass'n v. Cent. Susquehanna Intermediate Unit # 16*, 459 A.2d 889, 890 (Pa. Cmwlth. 1983)). "The essence test is an exceptionally deferential standard, because binding arbitration is a highly favored method of dispute resolution." *Dep't of Corr., State Corr. Inst. at Forest v. Pa. State Corr. Officers Ass'n*, 173 A.3d 854, 858 (Pa. Cmwlth. 2017) (citing *Northumberland Cty. Comm'rs v. Am. Fed'n of State, Cty. & Mun. Emps., AFL–CIO Local 2016, Council 86*, 71 A.3d 367, 374 (Pa. Cmwlth. 2013)). The party challenging an arbitration award bears the "burden of proving the award does not draw its essence from the [collective bargaining agreement]." *See Pa. State Sys. of Higher Educ.*, 98 A.3d at 14.

Here, the Association contends that the trial court erred and should be reversed because the Arbitration Award satisfies the essence test. *See* Association Brief at 24-37. Neither party argues that the first prong of the essence test is not

8

met; both parties agree that the terms of the CBA cover the proper procedures for posting and selecting candidates for vacant paraprofessional positions within the District. Therefore, we proceed directly to the second prong of the essence test – the question of whether the Arbitration Award can be rationally derived from the CBA.

Our Supreme Court has explained the following:

> Under the second prong, we ask whether the award itself can rationally be derived from the [collective bargaining agreement]. Here, again, we emphasize that the parties to a [collective bargaining agreement] have agreed to allow the arbitrator to give meaning to their agreement and fashion appropriate remedies for unforeseeable contingencies. The words of the [collective bargaining agreement] are not the exclusive source of rights and duties. The arbitrator is authorized to make findings of fact to inform his interpretation of the [collective bargaining agreement].
>
> Accordingly, even though an arbitrator is not permitted to ignore the [collective bargaining agreement's] plain language in fashioning an award, the arbitrator's understanding of the plain language must prevail. A reviewing court should not reject an award on the ground that the arbitrator misread the contract. The law is clear that an arbitrator's award must draw its essence from the [collective bargaining agreement]. It need not [] reflect the narrowest possible reading of the [collective bargaining agreement's] plain language. Even if a court's interpretation of the [collective bargaining agreement] is entirely different than the arbitrator's, the award must be upheld so long as it rationally derives from the [collective bargaining agreement].

*Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Pers. Ass'n*, 210 A.3d 993, 1006 (Pa. 2019) (internal quotation marks and citations omitted).

9

The instant case hinges on the interpretation of certain provisions of Article XIV of the CBA in order to resolve the question of whether the District may utilize academic proficiency testing not disclosed in a position announcement to assess candidate qualifications in filling vacancies with the District. The Association essentially argues that Article XIV of the CBA disallows the District from adding academic testing once a position announcement has been published. Upon review of the relevant CBA provisions, we find that the Arbitration Award is not rationally derived therefrom and, therefore, affirm the trial court.

Article XIV of the CBA concerns the posting of vacant positions within the District and provides as follows:

### Article XIV

### Posting of Positions

A. Openings for all positions and promotions, whether newly-created or vacated within the bargaining unit, shall be posted on the appropriate bulletin boards at least thirty (30) days before the position is to be filled, except in unusual or emergency circumstances, in which event the position may be posted for no less than five (5) days before the position is filled. A copy of all postings shall be sent to the President of the ASSOCIATION.

B. The posting may include, at the discretion of the DISTRICT, the title and location of the position, the qualifications required of applicants, the salary to be paid, and specific instructions for making an application or the posted notice shall reference a DISTRICT Administrator from whom this information may be obtained upon request.

C. An opening for any position within the bargaining unit, whether newly-created or vacated, including a promotion, shall be considered a vacancy.

D. The DISTRICT maintains the right to determine qualifications. When equally qualified individuals are to be selected for a vacancy, bargaining unit members shall be given a preference for the vacancy, provided the DISTRICT shall retain, in its sole discretion, the right to determine levels of competencies and qualifications necessary to fill the vacancy. When equally qualified individuals are both bargaining unit members, the individuals with the greater seniority shall be selected.

CBA at 23-24, R.R. at 40a-41a. The language of Article XIV(A) of the CBA requires that the District post notice of all vacant positions in the District on appropriate bulletin boards. *See* CBA at 23, R.R. at 40a. Article XIV(B) of the CBA further details the information the District may, in its discretion, include in vacancy notices, including, *inter alia*, applicant qualifications. *See id.* Article XIV(D) of the CBA expressly states that the District "maintains the right to determine qualifications" and "retain[s], in its sole discretion, the right to determine levels of competencies and qualifications necessary to fill the vacancy." CBA at 24, R.R. at 41a.

The Arbitrator acknowledged that "[t]here is no question that the [CBA] provides the District the right to establish the qualifications and competency of candidates when filling vacancies or newly created positions." Arbitration Award at 8, R.R. at 61a. Despite this, however, the Arbitrator stated: "I am not persuaded that the District has an unfettered right to add new requirements to a posting once a position is posted and bargaining unit members applied [sic] for the position." *Id.*

11

Article XIV(D) of the CBA expressly states that the District "maintains the right to determine qualifications" and "retain[s], in its sole discretion, the right to determine levels of competencies and qualifications necessary to fill the vacancy." CBA at 24, R.R. at 41a. Contrary to the Association's suggestion, this language is not ambiguous. The manner in which the District chooses to exercise its retained discretion to determine the qualifications necessary of applicants to fill a vacancy – conducting academic proficiency testing in this case – neither adds new qualifications nor changes the qualifications themselves. Instead, such testing aids the District in determining the level of the various candidates' required competencies and qualifications as stated in the position announcement. The plain language of the CBA reserves to the District the right, in its sole discretion, to so determine these candidate competencies and qualifications. *See* CBA at 24, R.R. at 41a. The Arbitrator expressly acknowledged that the CBA affords the District this right. *See* Arbitration Award at 8, R.R. at 61a. While we appreciate that an arbitration award need not reflect the narrowest possible reading of the CBA's plain language, *see Millcreek*, 210 A.3d at 1006, the Arbitrator's conclusion that by requiring academic proficiency testing during the second round of interviews, the District improperly added new requirements to the previously-posted vacant paraprofessional position, ignores the plain language of the CBA that the Arbitrator himself acknowledged and, thus, is not rationally derived from the language of the CBA.[7]

---

[7] There is nothing in the record or the Arbitration Award to support the Association's suggestion that the results of the academic proficiency testing were used as a "tie breaker" or somehow the only factor differentiating the bargaining unit applicants and Ms. Taylor, to whom the District awarded the vacant paraprofessional position. Moreover, the Association's argument that the academic proficiency testing was the deciding factor in the hiring process and that, absent the results of such testing, the candidates were otherwise all equal, ignores the fact that Ms. Taylor had been ranked multiple times by different individuals as the District's top candidate for the position based on other qualifications, including the fact that she had a teacher's certificate, which

12

We note that the Supreme Court's decision in *Millcreek* is distinguishable on the facts from the instant matter. *Millcreek* involved a school district and a union that were parties to a collective bargaining agreement that contained a no-subcontracting provision. 210 A.3d at 996. The union filed a grievance after the school district issued a request for proposals (RFP) for custodial work done by a union's bargaining units that ostensibly sought pricing for the performance of custodial work that was contracted to the union's bargaining units under the CBA for a three-year contract for a period to begin the day after the current collective bargaining agreement between the school district and the union was to expire. *Id.* at 996-97. The arbitrator determined that the process of subcontracting began when the school district decided to pursue outside contracting and then advised the union and advertised through the use of an RFP. *Id.* at 998. As a result, the arbitrator concluded that the school district's actions in issuing an RFP violated the collective bargaining agreement's no-subcontracting provision. *Id.* at 999.

The school district appealed to the court of common pleas, which affirmed the arbitrator's determination, finding under the essence test that (1) the issue of subcontracting was within the terms of the parties' collective bargaining agreement, and (2) the arbitrator's interpretation of the subcontracting clause was rationally derived from the collective bargaining agreement. *Millcreek*, 210 A.3d at 999.

The school district appealed and the Commonwealth Court reversed. *Millcreek*, 210 A.3d at 999. The Commonwealth Court found that, because the collective bargaining agreement was completely silent regarding RFPs and other parts of the subcontracting process, the issue before the arbitrator did not fall within

the bargaining unit candidates – a non-instructional PCA and a lunch monitor – did not possess. *See* Association's Brief in Opposition to Petition to Vacate Arbitration Award at 6, R.R. at 120a.

13

the terms of the collective bargaining agreement. *Id.* at 1000. Accordingly, the Commonwealth Court concluded that the arbitrator's award was not rationally derived from the collective bargaining agreement. *Id.* The Commonwealth Court also determined that, even if the essence test had been met, the arbitrator's determination violated public policy because the arbitrator's award preventing that RFPs be used in the bargaining process contravened the notion that such solicitations are prerequisites for intelligent bargaining. *Id.*

The Supreme Court reversed, determining that the arbitrator's conclusion that the text of the collective bargaining agreement, when viewed in relation to the parties' past practice, indicated that the parties intended to prohibit the school district from subcontracting, including taking formal steps toward entering a subcontract. *Millcreek*, 210 A.3d at 1006. This, the Supreme Court found, was an interpretation that rationally derived from the collective bargaining agreement. *Id.*

The text of the CBA in the instant matter, on the other hand, provides the District with the sole discretion to determine the levels of candidate qualifications, contains a broad integration clause precluding the consideration of past practices, and contemplates by its express language the consideration of non-bargaining unit members for advertised vacancies. As discussed herein, therefore, the Arbitration Award does not rationally derive from the terms of the CBA.

Further, to the extent the Association claims that certain alleged past practices between the Association and the District should guide the determination of this matter, we disagree.

Determining whether parties' past practices should be considered in deciding grievances under a collective bargaining agreement requires examining

14

later-executed collective bargaining agreements, and specifically any integration clauses contained therein. *See Allegheny County v. Allegheny Cty. Prison Emps. Indep. Union*, 381 A.2d 849, 854 (Pa. 1977). As our Supreme Court has explained:

> the existence in a contract of a broad integration clause, if it means anything, does clearly negate the notion that the parties meant to include any terms or conditions, including those based only on past practices, not specifically incorporated in the written contract or reasonably inferable from its provisions.

*Id.* The Supreme Court further explained that:

> where a collective bargaining agreement not only makes no mention whatever of past practices but does include a broad integration clause, an award which incorporates into the agreement, as separately enforceable conditions of the employment relationship, past practices which antedate the effective date of that agreement cannot be said to "draw its essence from the collective bargaining" agreement.

*Id.* Otherwise stated, "a past practice cannot be used where it is proscribed or conflicts with the language of the current collective bargaining agreement." *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 38 A.3d 975, 982 (Pa. Cmwlth. 2011) (reviewing *Allegheny Cty.*).

Here, the CBA makes no mention of past practices. *See generally* CBA, R.R. at 14a-52a. Additionally, Article XX of the CBA contains the following integration clause:

## Article XX

## Miscellaneous Provisions

. . . .

## C.  ENTIRE AGREEMENT

This Agreement represents the entire understanding between the DISTRICT and the ASSOCIATION, and there are no agreements, conditions or understandings, either oral or written, other than as set forth herein.  It is further agreed that no amendment, change, modification or addition to this Agreement shall be binding upon either party hereto unless reduced to writing and signed by both parties.

CBA at 26-27, R.R. at 43a-44a.  Moreover, Article XXIII of the CBA contains a repealer provision that states as follows:

## ARTICLE XXIII

## Repealer

Any and all previous contracts or agreements between the [District] and the [Association] are hereby repealed absolutely and declared to be null and void and of no force or effect whatsoever and are superceded in all respects whatsoever by the terms and conditions of this Agreement.

CBA at 29, R.R. at 46a.

After the first hearing, the trial court remanded the matter to the Arbitrator to receive evidence regarding the specific District past practice that allegedly precluded the District from awarding the paraprofessional position to a non-Association bargaining unit member, and further to make a determination

16

regarding whether such practice postdated the effective date of the CBA. *See* First Trial Court Opinion at 5, R.R. at 183a. Without taking further evidence, the Arbitrator listed in the Supplemental Arbitration Award what he felt were demonstrated past practices between the District and the Association.[8] *See* Supplemental Arbitration Award at 2-3, R.R. at 248a-49a. The Arbitrator did not, however, make any findings of fact regarding whether the alleged past practices postdated the CBA, which had been the point of the remand in the first place. *Id.* Due to this lack of temporal evidence, the trial court found that "[t]he record is entirely void of any evidence that the past practice of not adding testing to an interview process once the job is advertised postdates the effective date of the CBA." Second Trial Court Opinion at 6, R.R. at 370a. Based on the fact that the record contained no evidence regarding the timing of the alleged past practice, together with the fact that the CBA does not mention past practices but does include a broad integration clause, the trial court concluded that the Arbitrator improperly relied on past practices in granting the Grievance. *See id.* at 6-7, R.R. at 370a-71a. We find no error in this conclusion. *Allegheny Cty.*

---

[8] The Arbitrator listed the following three alleged past practices he felt were "key factors" in the instant matter:

> 1. That the [District] for two decades hired only bargaining unit members to fill vacant or newly created positions.
>
> 2. There was never an academic, educational or mental test as part of the application or interview process.
>
> 3. The [District] on December 30, 2016 unilaterally added the testing requirements after the interview process started.

Supplemental Arbitration Award at 2, R.R. at 248a.

Further, the Arbitration Award places the parties' past hiring history over the express language of the CBA. Regardless of the parties' historical hiring pattern, Article XIV(D) of the CBA expressly reserves to the District the exclusive right to determine candidates' competencies and qualifications in filling vacancies. *See* CBA at 23-24, R.R. at 40a-41a. Contrary to the Arbitrator's suggestion, the CBA in no way directs that successful candidates for vacancies must be Association bargaining unit members. *See* Supplemental Arbitration Award at 2, R.R. at 248a. In fact, the express preference contained in Article XIV(D) of the CBA – that Association bargaining unit members are to be given preference over other candidates in the event of equally qualified applicants – contemplates that non-bargaining unit member candidates may apply, be considered for, and be awarded vacancies advertised under the terms of the CBA, provided such candidates are more qualified than Association bargaining unit member applicants. *See* CBA at 23-24, R.R. at 40a-41a. Accordingly, in addition to the contemplation of past practices being precluded by the CBA's comprehensive integration clause, the Arbitrator's determination that the District was bound by the parties' past practice to fill the advertised paraprofessional position with an Association bargaining unit member is not rationally derived from the CBA.

For the above reasons, we affirm the decision of the trial court vacating the Arbitration Award.[9]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[9] Because we find that the Arbitration Award does not rationally derive from the CBA, we need not address whether the Arbitration Award violates public policy.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Riverside School District              :
                                    :
           v.                :
                                      :
Riverside Educational Support   :
Personnel Association ESP-PSEA-NEA, :   No. 1771 C.D. 2019
              Appellant      :

## O R D E R

AND NOW, this 9th day of October, 2020, the November 22, 2019 order of the Court of Common Pleas of Lackawanna County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge